142 P.2d 919

## RITTER v. ALBUQUERQUE GAS & ELECTRIC CO.,

No. 4774.

Supreme Court of New Mexico.

Oct. 19, 1943.

Joseph L. Smith and Mechem & Hannett, all of Albuquerque, for appellant.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellee.

MABRY, Justice.

Plaintiff, appellant, brought suit against defendant, appellee, the court sustained a motion to dismiss the complaint and this appeal resulted.

Omitting formal matters, appellant's complaint alleged:

"That in the month of November, 1923, the plaintiff was employed by the defendant as an electrician at the average monthly wage of $250.00 per month, and that on the 3d day of November, 1923, the plaintiff fell to the ground from an electric light pole while engaged in the service of the defendant, such fall causing severe and permanent injury to his left leg, arm, and side, and said injuries resulting in permanent partial disability from that date.

"That immediately after said injuries were sustained by the plaintiff, it was agreed between the plaintiff and defendant that the plaintiff would forbear to file his claim for compensation under the Workmen's Compensation Act in consideration of the defendant's continuing the plaintiff in its employ at the average monthly salary of $250.00 per month, which agreement was carried out between the plaintiff and defendant until the month of August, 1939, at which time it became apparent that the plaintiff's injuries so sustained as aforesaid were so severe and the results thereof were such that he would never again be able to enter upon the gainful pursuit of his regular occupation, to-wit, electrician, because of his physical disability. It was thereupon agreed by and between the plaintiff and defendant that said original contract should be modified as follows, to-wit:

that the plaintiff should remain in the service of the defendant during the rest of his natural lifetime and do such work as he was able to do as a common laborer or otherwise, and thereupon and thereafter said agreement was carried out and the plaintiff was employed in the meter room of the defendant, and said contract was carried out by each of the parties thereto up to and until the 11th day of December, 1942, when the defendant wrongfully breached said contract and dismissed plaintiff from its service, and has ever since failed, neglected and refused to pay him his compensation in the sum of $125.00 per month.

"That the plaintiff up to the time of said dismissal had performed all duties required and requested of him by the defendant in the performance of said contract and was then and there and still is ready and willing to perform the obligations of said contract, encumbent upon him to be performed, but the defendant without cause breached said contract, as aforesaid."

The motion to dismiss the said complaint reads: "The complaint fails to state a claim upon which relief can be granted."

Appellant assigns error under two points, namely: (1) The court erred in sustaining the motion to dismiss, general in terms, for the reason that such general motion did not advise plaintiff of the points, questions, or principles of law upon which the defendant relies to support its motion; and (2) the court erred in sustaining the defendant's motion to dismiss the plaintiff's complaint.

■ Under the first point argued, we have a practice question. Any decision upon this first assignment would not affect the result to be arrived at under the second, but counsel for both parties urge us to notice and decide the question, as one which might now well be settled or clarified as our newly adopted rules come into operation. We do not agree with appellant in his appraisal of the rule in question (Rule 12 (b) 6, of the Rules of Civil Procedure for the District Courts, Effective August 1, 1942), under which appellee moved. He contends that the motion to dismiss did not sufficiently state the grounds upon which it was based; that, in reciting no more detail than as is hereinbefore shown to be contained in the motion, it was not a compliance with the rule. Subdivision 6 of the rule requires the movant to allege a "failure to state a claim upon which relief can be granted".

The rule in question, together with Rule 7 (b) requiring that all applications to the court for an order shall be by written motion which "shall state with particularity the grounds therefor" and to set forth the relief or order sought, are in the exact language of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which rules we have adopted, with some considerable modification and omissions. Under Rule 12 (b) 6 a motion to dismiss is properly granted, we hold, only when it appears that under no state of facts provable under the claim could plaintiff recover or be entitled to relief.

Appellee relies upon numerous authorities to support its position that the motion was sufficient, absent any request on the part of appellant for more "particularity" such as is provided for by Rule 12 (e). The record discloses no motion on the part of appellant "for a more definite statement or for a bill of particulars of any matter which is not averred with sufficient definiteness or particularity to enable it (him) to properly prepare its (his) responsive pleading or to prepare for trial". Rule 12 (e). Rule 7 (c) specifically provides that "demurrers, pleas and exceptions for insufficiency of a pleading shall not be used". Clearly Rule 12 (b) 6 supersedes Sec. 105-412, Comp.Laws 1929, upon which appellant relies; and, therefore, many of the New Mexico decisions which he cites and relies upon are not now in point. It is true that under Sec. 105-412, supra, now superseded by the rule as above shown, we have held that a demurrer stating simply that the complaint did not state "facts sufficient to constitute a cause of action" was insufficient (Williams v. Kemp, 33 N.M. 593, 273· P. 12, 16; General Motors Acceptance Corp. v. Ballard, 37 N.M. 61, 17 P.2d 946), but this procedural statute now being superseded by the rules hereinabove cited, 12 (b) 6, 12 (e), and 7 (c), the authority relied upon is obviously, no longer controlling.

Rule 12 (e) affords parties who desire more particularity before responding to a pleading all the aid necessary. The first point urged is, therefore, without merit. See 1 Moore's Fed. Practice, p. 428; 17 Hughes' Fed. Practice, p. 286, sec. 19533; 4 Moore's Fed. Practice, p. 156, form 12.06; 4 Moore's Fed. Practice, p. 166, form 12.21 and note; Leimer v. State Mutual Life Assur. Co., 8 Cir., 108 F.2d 302; Karl Kiefer Mach. Co. v. U. S. Bottlers Machinery Co., 7 Cir., 113 F.2d 356; Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865; Keasbey & Mattison Co. v. Rothensies, D.C., 1 F.R.D. 626; Mahoney v. Bethlehem Eng. Corp., D.C., 27 F.Supp. 865; Eberle v. Sinclair Prairie Oil Co., D.C., 35 F.Supp. 296; United States v. Elm Spring Farm Co. et al., D.C., 3 F.R.D. 43.

The second point involves the right of appellant, under the circumstances of this case, to so compromise and settle its claim with appellee. Appellant argues that since, through our Workmen's Compensation Act, the legislature has not by positive enactment deprived litigant of the right to compromise and settle such claim without the approval of court, this right obtains as a constitutional right that cannot be impaired.

The only statute touching upon the authority of the court·to authorize or approve any settlement made by the parties is found in Sec. 13, Chap. 83, Laws of 1917 (1941 Comp. sec. 57-913), which applies to settlements made after the filing of a claim—which could not be applied here— and Sec. 24 of the same act, 1941 Comp. sec. 57-925. Section 13 provides in substance that after the filing of his claim the

employer "shall be allowed 20 days thereafter to answer the same or settle and adjust the claim thereby made by such workman". There is further provision that in event the employer "shall file in the office of such clerk a written final settlement, adjustment, or release signed by such plaintiff and defendants then and in such event a judgment shall, under order of court, be entered of record in accordance with such settlement, * * *".

Section 24, so far as pertinent to the question before us, provides: "The district court in which the right to compensation provided herein is enforceable shall at all times have the right and power to authorize, direct or approve any settlement or compromise of any claim for compensation hereunder by any injured workman or his personal representative or dependents, * * * for such amount and payable in installments or lump sum or in such other way and manner as the court may approve." This section clearly empowers· the district court to "authorize, direct or approve any settlement or compromise of any claim for compensation" brought to it; but this is not to say that such authorization, direction or approval is invariably required.

The significance of a portion of Section 13 which precedes that portion of the section heretofore referred to and quoted from must not be overlooked. We find there this pertinent provision: "In the event such employer shall fail or refuse to pay the compensation herein provided to such workman after having received such notice, or, without such notice when no notice is required, it shall be the duty of such workman, insisting upon the payment thereof, to file a claim therefor in the manner and within the time hereinafter provided."

Clearly, if the duty "to pay the compensation herein provided" is enjoined upon the employer, and a claim may be filed only "in the event such employer shall fail or refuse" to so pay, a settlement between the parties is not only authorized but it is anticipated. Moreover, we are inclined to the view expressed in the case of Edgemont Fuel Co. v. Patton, 256 Ky. 538, 76 S.W.2d 284, and thereafter approved and followed in Langhorne, etc., Co. v. Newsome et al., 1941, 285 Ky. 519, 148 S.W.2d 684, that the settlement or compromise of any "claim" which the district court has "the right and power to authorize, direct or approve" has reference, not to settlements and compromises voluntarily made between the parties and without invoking the jurisdiction of the court, but only to claims actually filed and appropriately before the court. This interpretation, it seems to us, fully harmonizes Section 24 with that portion of Section 13 herein last above mentioned. We would thus employ the word "claim" as being synonymous with "demand", and as meaning the assertion of liability against another. See vol. 7, Words and Phrases, Perm.Ed., p. 365.

This Section 13, if it does not directly authorize settlement between the parties to avoid the filing of claims, at least leaves the employer and employee unimpaired as to their full power to contract, with the right of either party, if he senses the need for his own protection, to file such contract with the court and secure a judgment thereupon as provided by Section 13 of the act. The court, in the latter contingency, thereby becomes the agency for the enforcement of the agreement, but not, under such circumstances, the agency for its authorization. The statute nowhere requires that the contract must have the approval of the court. Nor is there any provision for disapproval by the court. Appellant cites and relies upon language employed in Tocci v. Albuquerque & Cerrillos Coal Co., 45 N.M. 133, 112 P.2d 515, 521, as helpful. In this case we find some discussion of the approval by the court of a settlement. This particular question seems not to have been there presented, and it certainly was not decided, as to whether approval by the court was essential to a valid settlement. Nevertheless, counsel for appellant would have us not overlook language found in this. case to the effect: "It is not a proper function of the courts to relieve either party to a contract from its binding effect where it has been entered into without fraud or imposition and is not due to a mistake against which equity will afford relief. * * *"

Appellant places his principal reliance upon the case of Brigham Young University v. Industrial Commission, 74 Utah 349, 279 P. 889, 65 A.L.R. 152, where a somewhat related question was before the court, and also upon what he senses as his ability to distinguish the three cases cited and largely relied upon by appellee, namely, Woolsey v. Panhandle Refin. Co., 131 Tex. 449, 116 S.W.2d 675; Blair v. Laughead, 108 Pa.Super. 407, 165 A. 58; and Conlon v. City of Lawrence, 299 Mass. 528, 13 N.E.2d 425. The Utah court in the case above cited, supports appellant's contention. We quote from the opinion [74 Utah 349, 279 P. 893, 65 A.L.R. 152]: "The provisions of our Workmen's Compensation Act make it an exclusive remedy for an employe or his dependents to recover compensation from an employer for an injury sustained by the employe in the course of his employment. * * * The making of a settlement under such circumstances is not detrimental to the interest of the state or of the public. It rather subserves such interest. The right of parties sui juris to settle their own controversy and avoid litigation is a valuable and absolute right, and may be exercised by them under all circumstances, unless the state, under a proper exercise of police power, has circumscribed, restricted, or prohibited it. Holding as we do that no such inhibition or restriction either expressly or by necessary implication is manifested by the act, we think the parties had the undoubted right to make the settlement which was made by them. * * *"

The Utah court was dealing with the question of whether the parties, employer

and employee, absent a statutory negation of the right to settle without approval, but in view of a provision in the act, sec. 3151, Utah Comp.Laws 1917, providing that "No agreement by an employe to waive his rights to compensation under this title shall be valid" could settle. It was there held, as above shown, that since no restriction to so contract is manifested by the act, complete freedom to so contract is reserved to the parties. As to the question of whether such contract ·constituted a waiver, it was held that the waiver contemplated by the statute was such a waiver as would abandon, throw away, renounce, repudiate or surrender a claim or a privilege. The. Utah court had a somewhat broader question, since we have in our act no prohibition against such waiver common to most statutes and expressed substantially in this and other forms. But, the question of the right to settle and adjust claims as between the parties was upheld for the reason that the Utah statute did not prohibit such settlement. Under the Utah act then before the court, the Industrial Commission, rather than the court settles and determines workmen's compensation claims.

■ In many cases the courts have been called upon to determine whether settlements made without authorization from or approval by industrial commissions, or like boards, would not violate the statutory provision found in many statutes prohibiting waiver of any character which would relieve the employer, in whole or in part,

from liability. Our search has persuaded us that a great many, if not most, states do prohibit such compromises and settlements without approval. And, even where such approval is required, "it has been held that a court or commission has no power to entertain proceedings for approval of an agreement as to workmen's compensation except such as is conferred by statute". Barber Asphalt Corp. v. Industrial Comm., Utah, 135 P.2d 266, 272. In Utah, as in many other states, the commission or board authorized to administer the Workmen's Compensation Act is authorized to reopen cases upon a showing that there has been a change of condition of the injured workman or that there has been some development which shows the former award to be either inadequate or excessive.

New Mexico has no such provision, as to inadequacy. This fact was pointed to with regret by Mr. Chief Justice Brice in the recent case of Hudson v. Herschbach Drilling Co. et al., 46 N.M. 330, 128 P.2d 1044, 1045, when he observed that our statute authorizes an examination and hearing to determine whether there has taken place a diminution or termination of disability, in which event the court shall order diminution or termination of payment of compensation, as the facts may warrant. The opinion continued: "This seems to present a glaring inequality, since there is no [corollary] provision for increase of payments in case of increased disability, as is provided for in the statutes of some other states." And the opinion continued: "It is to be noted in passing that the stat-

ute seems to refer to installment payments alone, and has no bearing, apparently, upon lump sum settlements."

█ It is true our statute (Laws of 1917, chapter 83, section 5) must be construed "as creating a new right and special procedure for the enforcement of the same, and the rights and remedies provided in this act * * * shall be exclusive of all other rights and remedies of such workman * * *". But, be that as it may, we yet have the express statutory authority for the settlement and adjustment of claims by the workmen; and, absent a legislative invasion of the field and a legislative declaration which would exclude such settlements without the approval of some agency, or the court, the ordinary rules governing settlements and agreements will prevail. "No rule of law is better settled than that an agreement to forbear proceedings at law or in equity to enforce a well-founded claim is a sufficient consideration to support a promise; and whether proceedings to enforce the disputed claim have or have not been instituted, it has been held, makes no difference. * * * Especially do the courts disregard the validity of the original claim where the promise given in consideration for release from liability for a personal injury takes the form of an agreement to furnish employment to the claimant." 11 Am.Jur. p. 266, sec. 19.

█ An exhaustive note upon the question of the "validity and duration" of contracts purporting to be for permanent employment is found in 135 A.L.R. 645 et seq.

There can be no doubt of the soundness of the rule permitting an injured employee to release his claim for personal injuries previously sustained against an employer, or a dismissal of such claim, or the foregoing of such employee of the right to prosecute therefor; or that such release constitutes sufficient consideration to support a contract for permanent employment, or for life employment, etc., in the absence of a statute prohibiting such release or an agreement of forbearance in the prosecution of a claim. In the case of Horvath v. Sheridan-Wyoming Coal Co., 1942, 58 Wyo. 211, 131 P.2d 315, it was held that in view of the provisions of the Wyoming statute, Rev.St.1931, § 124-110, to the effect that "no contract * * * shall operate to relieve the employer, in whole or in part, from any liability created" by the act, an agreement on the part of the workman to surrender his right to reopen a workman's compensation award theretofore made, in consideration of a contract for employment, could not be sustained because there was no consideration for the contract—that the law prohibited any such forbearance. The Brigham Young University Case, supra, was there noticed and distinguished as being a decision based upon a materially different statute. We have no statute in New Mexico forbidding such settlements or prohibiting waiver.

At least two of the above mentioned three cases (those from Texas and Massachusetts) upon which appellee relies, as well as many others that might be cited,

may be easily distinguished because of the language of the statutes under consideration in each of these cases. Under the Texas holding the employee and employer are prohibited from making any lump sum settlement without the approval of the Industrial Accident Board of the state; the Texas statute expressly requires such approval. It should be noticed that the Texas court in that case observed that under its earlier Workmen's Compensation Act of 1913, Chap. 179, Laws 1913, there was no prohibition against parties making such settlements independent of and without the approval of such Board, but that the present act carries such prohibition.

See also Jenkins v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 211 S.W. 349, where we have an interpretation of the Texas statute before the amendment and when it was somewhat like our own now under consideration.

Likewise, the Supreme Court of Massachusetts in Conlon v. City of Lawrence, supra, was interpreting a statute, G.L.(Ter. Ed.) c. 152, § 46, which provided that agreements "to waive his rights to compensation" as between the workman and the employer must be in writing and filed with, and approved in writing by, the agency administering the compensation act. See also King v. Viscoloid Co., 219 Mass. 420, 106 N.E. 988, Ann.Cas.1916D, 1170, appraising the common law right of a parent for loss of services of a minor in the light of the compensation act of that state providing for compensation for the minor. The court there held that the parent's right to sue for the loss of services of such minor was not so lost to it, i. e., the court in that case refused to conjecture as to the legislative mind and thus broaden, by interpretation, the language of the Workmen's Compensation Act to carry its coverage beyond the legislative scope within which the lawmakers were dealing.

In Blair v. Laughead, supra, the Pennsylvania court also had under consideration a statute providing that all such agreements fixing compensation as between employee and employer must be in writing and signed by all parties in interest, and it prohibited any settlement between the parties made prior to the tenth day after the occurrence of the injury. The distinction to be drawn under the Pennsylvania case is, obviously, not so great as that shown to exist as between our statute and those of Texas and Massachusetts, if in fact the distinction relied upon in the Pennsylvania case aids us at all.

The Indiana Court in Toni v. Kingan & Co., 214 Ind. 611, 15 N.E.2d 80, emphasized and approved a very salutary rule to the effect that the employer will be estopped from taking any unconscionable advantage where such contract and agreement is entered into, and observed over a long period of years. Absent in our statute some provision comparable to the Massachusetts and Texas statutes, appellee's contention, otherwise of much force and earnestly urged, loses much of its force.

Sec. 13, Chap. 92, Laws of 1937, which provides that any conduct of the employer

or insurer which, in whole or in part, causes the injured employee to fail to give notice of injury, file his claim or bring suit, shall not deprive such employee of the right to compensation, was not in effect, of course, when the accident upon which the alleged contract and agreement were based, which occurred in 1923, and therefore it may not be relied upon. Appellant refers to this desirable provision of the later act and appraises it, not as an enlargement of a right not theretofore possessed but rather as a legislative clarification of the rule theretofore obtaining which rule itself, absent an appropriate and controlling statutory restriction, did not, under the circumstances here present, abridge such right.

Conceding the act in question to be highly desirable social legislation, and conceding further that it is intended by such legislation to not only place upon the industry the hazards of employment in certain cases, but to protect the workman in securing for him all reasonable compensation to which he would be entitled, must we say that the legislature may not choose its own, though perhaps not the most adequate, method in its attempt to accomplish this purpose? We think not. Conceding, without deciding, that the legislature could, without offending against freedom of contract, have restricted settlements to those approved by the court, obviously it did not have to so restrict them. We know of no public policy evoked by this character of legislation binding us to a contrary view.

 We have the allegation that a contract was entered into immediately after the accident; that the appellant, for valuable consideration, forbore to file his claim for compensation; that he carried out his obligation under the contract and now stands ready and willing to so further perform; and that the appellee breached the contract. This is sufficient as against the motion. Kraus v. General Motors Corp., D.C., 27 F.Supp. 537. See also Eberle v. Sinclair Prairie Oil Co., supra; Leimer v. State Mutual Life Assur. Co., supra; for cases interpreting Rule 12(b) 6.

 It would seem only logical to say that, absent a statutory restriction evidencing a contrary legislative policy, since a party will, by failure to present a timely claim, waive all right to compensation, he would be entitled to be inactive in consideration of a settlement satisfactory to him. The only duty imposed upon the workman in respect to perseverance in securing compensation to which he is entitled is that duty imposed upon "such workman, insisting upon payment" to file his claim. Section 13, supra. See also State v. Hernandez, 46 N.M. 134, 123 P.2d 387, where similar argument was employed as it related to the right to waive trial by jury.

Our Workmen's Compensation Act not prohibiting such compromise or settlement of claim for compensation, and the statute in question necessarily recognizing the right to make and enter into such contracts unencumbered by any requirement for court approval since it contemplates payment by the employer without filing of

claim, such right, we hold, exists. It was error for the court to sustain the motion.

The judgment is reversed with instructions to the trial court to overrule the motion and proceed thereafter in a manner not inconsistent with this opinion, and

It is so ordered.

SADLER, C. J., and BICKLEY, J., concur.

THREET, J., did not participate.

BRICE, Justice (dissenting).

It is the public policy of this state, expressed in the Workmen's Compensation Act, that the employer *"shall become liable to,* and *shall pay* any such workman injured by accident," etc., Sec. 57-902 N.M. Sts. 1941, "the compensation *provided for in this act"* where the employer and employee are subject to the act and the employee is injured by accident while performing services arising out of and in the course of his employment, Sec. 57-906, N.M.Sts. 1941. In all cases where specific amounts for injuries are not provided for, compensation is determined upon the basis of the employee's average weekly wage, and is a mere matter of calculation when the character and extent of the injury are determined. If the compensation *provided for in the act* is not paid after statutory notice, or without it if no notice is required, it becomes the duty of the workman to file a claim therefor with the clerk of the district court against the employer and his surety, who are allowed twenty days within which to settle the claim, or answer. (Italics mine)

"In event, prior to the expiration of such time last named (20 days) the defendants, or any of them, shall file in the office of such clerk, a written final settlement adjustment or release signed by such plaintiff and defendants, then and in such event a judgment shall under order of court be entered of record in accordance with such settlement, and carrying the same into effect and providing for the execution or executions to be issued thereunder for any future payments therein provided, which judgment may, with the approval of the court, be satisfied of record if, by such instrument or instruments, it is shown that full payments have already been made." Sec. 57-913 N.M.Sts. 1941.

This character of settlement or adjustment contemplates that there had been a bona fide refusal to pay the employee *the amount due him* because of an accidental injury; that he had filed his claim because of such failure to pay; that notice (if required) had been given the employer of the filing of such claim, and that thereafter a settlement or adjustment had been made between the parties.

Adjust means "to settle or arrange; to free differences or discrepancies; to bring to a satisfactory state so that parties are agreed; as to adjust accounts." Settlement means "act or process of adjusting or determining; composure of doubts or differences; arrangement; adjustment; as set-

tlement of a controversy, of accounts; also condition of affairs thus adjusted." Webster's New International Dictionary.

Or, in other words, a mutual determination of *the amount due* the injured employee under the provisions of the Workmen's Compensation Act. It makes no provision for a compromise, payment in lump sum, or in any other way, or for any other amounts than that provided by law.

If this statute authorizes a binding compromise settlement without the approval of the court after the filing of a claim (a question that need not be decided), then this is true because the employee, upon the filing of a bona fide claim, is, in practically all cases, represented by counsel whom the legislature has assumed is capable of caring for the employee's interests.

But there is another statute that specifically authorizes compromises. It is as follows: "The district court in which the right to compensation provided herein is enforceable shall at all times have the right and power to authorize, direct or approve any settlement or compromise of any claim for compensation hereunder by any injured workman or his personal representative or dependents, or any person appointed by the court to receive payment of the same, for such amount and payable in installments or lump sum or in such other way and manner as the court may approve." Sec. 57-925 N.M.Sts. 1941.

The majority opinion in effect holds that this provision of the Workmen's Compensation Act is ineffective. It annuls the statute.

It either means nothing as the majority hold, or it is a mandatory statute which requires the approval of the court to effectuate a valid settlement or compromise. If settlements and compromises may be made without the court's approval, then the statute is utterly void and meaningless as the majority, in effect, hold, and the legislature did a vain and useless thing; for if the parties are permitted to settle and compromise claims without the approval of the court there is no object or necessity for procuring an approval that is legally ineffective. No such construction is authorized if a purpose for its enactment can be discovered.

It is asserted that the statute has no reference to "settlements and compromises voluntarily made between the parties and without the jurisdiction of the court, but only to claims actually filed and appropriately before the court." If this is true then the statute is a duplication. Compromises or settlements after claims are filed are provided for by the first statute quoted in this dissent. The fact that the authority is given to approve "at all times", negatives any such construction.

Many states have laws prohibiting settlements without the approval of some board or court, and a number of these prohibit all compromises; that is, the employer must pay the statutory compensation to the injured employee.

But it is asserted that this statute does not in terms prohibit such settlement or compromise. True, but if it had, no construction would be necessary. It does, however, provide the manner in which settlements and compromises may be made, and this is a negation of any other mode.

Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 131, 73 L.Ed. 379, is a case in point. There an income tax was settled by subordinate officers. The statute provided that such settlements *could be made* with the advice of the Secretary of the Treasury and recommendation of the Attorney General. The question was whether it could be made in any other manner. It was held that when a statute limits a thing to be done in a particular mode it includes a negation of every other mode. The income tax had been compromised by subordinate officers in the bureau of internal revenue. The Supreme Court said: "We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

In Fancher v. County Com'rs, 28 N.M. 179, 210 P. 237, the statute provided that an index of the recorded instruments could be made by the county clerk. It was held that the commissioners were not authorized to employ a private individual to make the index. There was quoted in said case (page 189 of 28 N.M., page 241 of 210 P.) the following from Lewis Sutherland's Statutory Construction: "Where authority is given to do a particular thing and the mode of doing it is prescribed, it is limited to be done in that mode; all other modes are excluded. This is a part of the so-called doctrine of expressio unius est exclusio alterius." Then this court said: "Thus by Section 4798, supra, we find that the county commissioners had the power to have a complete and accurate index made of all instruments of record affecting real property by the county clerk of the county, and that when so directed it would be the duty of the clerk to prepare the index. The rule of law thus made applicable is that the Legislature may prescribe the method for exercising the jurisdiction of the board of county commissioners, and where it prescribes the mode of procedure the rule is exclusive of all others and must be followed."

The majority cite Brigham Young University v. Industrial Comm., 74 Utah 349, 279 P. 889, 893, 65 A.L.R. 152, in support of their contention that a compromise made without the consent or approval of the district court binds the parties. The compromise in that case was made without the consent of the Industrial Commission of Utah, which it was asserted, could not be

legally done. The Utah act as do those of a number of states, contains the provision: "No agreement by an employe to waive his rights to compensation under this title shall be valid * * *." It was held by the Utah court that the act "does not expressly or by necessary implication" prohibit a compromise settlement of a claim; that the code provision quoted had no reference to compromises. The court stated: "The section of the act referred to does not, in our judgment, support the view that the right of the employer and employee to settle a claim arising under the act after it has arisen is circumscribed or prohibited. The language 'no agreement by an employe to waive his rights to compensation under this title shall be valid' does not expressly or by necessary implication declare such a prohibition. * * * It is a contradiction of terms to say that, when a present and existing claim is settled, the claim itself is abandoned, surrendered or relinquished—is waived. By making such a settlement, it in no sense may be said that the 'rights to compensation under the' act were surrendered or waived. To the contrary, such rights were thereby asserted, affirmed, and recognized, not waived."

The Utah court's decision is based upon an entirely different statute which that court holds does not prohibit compromises, although this is in conflict with the holding of both the Texas and Illinois courts. But if it can be said that this case is authority for the views expressed by the majority, then its effect is greatly limited by a subsequent case of the same court (Barber Asphalt Corp. v. Industrial Comm., Utah, 135 P.2d 266) in which the holding that the compromise of a claim as authorized under the waiver statute was limited to cases like the one decided, where, as was stated in the Barber Asphalt case, there was grave doubt whether the employee was entitled to any compensation. The Utah court in the latter case makes reference to the decision of the same court in Ætna Life Insurance Co. v. Industrial Comm., 73 Utah 366, 274 P. 139, 142, in which the court expressed grave doubt as to whether any compromise was effective even though approved by the Industrial Commission "unless the compensation agreed upon and paid was all he [the employee] would be entitled to under the terms of the Industrial Act." It was said in the Ætna Life Insurance Company case: "The Utah statute does not provide for a settlement by agreement of the parties as do the statutes of the states referred to, and, in view of the evident purpose of the act, it is open to serious question whether an agreement made, and settlement had in pursuance thereof, even with the consent of the commission, would be binding upon an applicant for compensation unless the compensation agreed upon and paid was all he would be entitled to under the terms of the Industrial Act. The commission is an administrative body merely. Its duty is to administer the law applicable to the case and award such compensation as the law authorizes. However, it is not neces-

sary to decide this question in the instant case. * * * Before leaving this question, it may be stated that, while our statute makes no provision for settling claims by agreement it does expressly provide. * * * 'No agreement by an employee to waive his rights to compensation under this title shall be valid.'"

In commenting on the decisions of other states, the Utah court, in the Barber Asphalt case [135 P.2d 273], said: "Several states have compensation acts which give such authority [to compromise] to the industrial commission, and some of them provide for special procedure to procure such approval. It is generally held that where the commission *is authorized to approve of compromise settlements the settlement is binding when approved, but not before.*" (My emphasis) Citing International Coal & Min. Co. v. Nicholas, 293 Ill. 524, 127 N.E. 703, 705, 10 A.L.R. 1010, in which the Illinois court said, "Such a settlement must be petitioned for as provided in section 9 of the act [Smith-Hurd Stats. c. 48, § 146] and must be approved by the Industrial Commission."

The Illinois statute is substantially the same as that of Utah. It provides: "No employee, personal representative, or beneficiary shall have power to waive any of the provisions of this act in regard to the amount of compensation which may be payable to such employee, personal representative or beneficiary hereunder except after approval by the Industrial Board." Smith-Hurd Stats. c. 48, § 160.

The Illinois court held that the employer could not relieve himself of liability under the Workmen's Compensation Act by contract with his employee. That the language of the act applied "with equal force here, where the employer is seeking to limit its liability by settlement in the nature of the lump sum payment. This cannot be done without the approval of the Industrial Commission."

In my judgment this construction of substantially the same statute as that of Utah is supported by the better reasoning.

If, in this particular case, the employee will be injured by my construction of the statute, nevertheless such construction will protect thousands of other employees against unjust and unrighteous settlements of claims by which they will be deprived of compensation to which they are legally entitled. Such a claim was before the Supreme Court of Texas in Woolsey v. Panhandle Refin. Co., 131 Tex. 449, 116 S.W. 2d 675, 678, in which that court said: "It may be true that by refusing to enforce this contract injury may result to plaintiff. However, refusing to enforce the agreement of settlement involved here will be far less disastrous to the great army of employees operating under this statute than to hold that under the law an employee and an employer can contract away the rights of the employee. In line with the universally accepted rule, this court has repeatedly refused to enforce contracts which are either expressly or impliedly prohibited by statutes or by public policy."

It is the public policy of this state, expressed in the Workmen's Compensation Act, that an injured employee who is entitled to compensation shall be paid the amount provided by the statute, and for the purpose of securing to him that to which he is entitled, no settlement or compromise can be made without the approval of the district court, unless it may be in those cases in which bona fide claims have been filed. In such cases, almost without exception, employees are represented by counsel. Any contract in violation of this public policy is void. Woolsey v. Panhandle Refining Co., supra.

The judgment of the district court should be affirmed.