392 P.2d 407

**Teofilo Tom BACA, Claimant, Plaintiff-Appellee,**

**v.**

**SWIFT & COMPANY, Employer, Defendant-Appellant.**

**No. 7070.**

Supreme Court of New Mexico.

May 18, 1964.

Merritt W. Oldaker, Roy F. Miller, Jr., William H. Oldaker, Albuquerque, for appellant.

Sheehan, Duhigg & Christensen, Albuquerque, for appellee.

CASWELL S. NEAL, District Judge.

This is an appeal by Swift and Company, appellant-employer, from a judgment entered in the district court of Bernalillo County in favor of Teofilo Tom Baca, employee-appellee, in a case arising under the Workmen's Compensation Act of New Mexico as it existed on April 15, 1959, the date of the alleged accidental injury.

The case was tried before a jury and two separate verdicts were returned by the

jury. One verdict found that the appellee had been totally disabled for 115 weeks prior to the trial on June 23, 1961. The other verdict found that appellee was suffering from total and permanent disability at the time of the trial. Judgment was entered for total and permanent disability on the verdicts, medical costs assessed and a $2,500.00 attorney fee was awarded appellee's attorneys. An appeal has been timely taken.

The facts, which are in some dispute, are substantially as follows:

On April 13, 1959, appellee was engaged in unloading quarters of beef from the delivery truck he was operating for Swift and Company. He experienced the onset of a low back pain. He returned to the plant of appellant and reported the accident to his supervisor, the plant superintendent in charge of all of the plant's employees. The supervisor advised appellee to consult Dr. Farrell, the company doctor, after calling the doctor and making an appointment for appellee. Appellee consulted the doctor who concluded that appellee had suffered an acute lumbo-sacral strain with no involvement of the spinal boney processes. The doctor ordered claimant to bed and to "lay off work" and started him on physical therapy treatment. He treated claimant on April 13, 16, 17, 18, 20, and 22; and on April 22 authorized claimant to return to light work. He returned to work on April 22, but after about four hours work he found "he could not take it," and returned to the doctor, who again ordered that he not return to work and proceeded with his therapy treatments on April 23, 24, 25 and 27. On April 27, he authorized claimant to return to work, he having, according to the doctor, no pain and no disability which the doctor could diagnose. Appellee nevertheless was supplied with, and was wearing, a lumbo-sacral corset, receiving analgesic medication and was to continue treatment. Appellee claims he was still suffering pain. The doctor called appellee's supervisor and advised that appellee had progressed satisfactorily and could return to work. Claimant was instructed to return to light work as a precautionary matter. He returned to work on April 28, 1959, and performed light work for a few days and then returned to his regular duties.

On May 5, appellee was sent to the office of Mr. Hulsey, the office manager, by his supervisor for the purpose of taking care of compensation arrangements for his temporary total disability and was given a draft in the amount of $35.30 representing 5 days total temporary disability at the rate of $42.50 per week, it being the appellant's policy to advance compensation to injured employees and add thereto the difference between the compensation to which they were entitled and their regular salary with the understanding that when compensation payments were received the company's pay-

roll would be reduced to the extent of the amount of the compensation paid. Claimant was so advised and endorsed the check, which is in evidence, and turned it over to appellant. He was asked to sign a release, which he did. The evidence is conflicting as to the circumstances under which the release, which appellee did not read before he signed, was signed. Appellant claims it was a full release and final payment of all compensation arising from the accident and injuries. Appellee denies this, or that it was so intended. Appellee worked from April 28 through May 11, during which time he suffered pain and consulted Dr. Farrell on April 30, May 1, 2, 5 and 7. He complained of his back hurting "around the office" and to the other employees. He claims he told his supervisor that his back was hurting and that his supervisor knew that he was wearing a corset. On May 12 he was discharged because, according to his supervisor, his work prior to his injury had been unsatisfactory and he had been warned that incidents of absence would not be tolerated. His discharge was over the phone. Appellee claims he had called to tell his supervisor he was going to the doctor, but that he was discharged before he had a chance to do this. The supervisor had another version of the conversation. Subsequent to the phone call the supervisor had no further communication from the appellee until suit was filed. However, on June 20, 1959, he received Dr. Farrell's report and was aware that appellee had been treated by the doctor subsequent to April 28, the day he had returned to work for the last period. On May 12, claimant visited Dr. Szerlip who examined the claimant at request of claimant's attorney and found no diagnosis of impairment or disability to any intervertebral disc. Appellee worked at various jobs hereinafter set out until he filed this claim on February 25, 1960.

On March 16, 1960, he called on Dr. Waldo Hanns who found a minimal narrowing of the lumbo-sacral joint and a congenital defect of the sacrum, and told claimant to rest and to avoid activities causing back pain.

On March 20, 1960, while in the employ of San Bar Construction Company, he fell off a tractor and reported he had hurt his back and shoulder. After this incident he did not return to work at San Bar until the week ending June 16, 1960, but in the interim worked about one and one-half months for Morris Contractors doing heavy labor. While there, he slipped and almost fell, pushing a loaded wheelbarrow, and experienced the same sensation in his back as on April 13, 1959. He left this job because his back was hurting and returned to work with San Bar. On October 18, he again visited Dr. Hanns, who examined appellee again and concluded that appellee's back was degenerated and he should obtain

and wear an adequate support. He found no disc injury.

On November 29, 1960, Dr. Hanns did a discogram and concluded that a spinal fusion should be done. He found two discs in the early stages of degeneration which, from the history given only, he related to the injury of April 13, 1959.

On January 20, 1960, Dr. Hanns performed a lamindectomy and exploration of L–5, S–1 disc. Appellee remained in the hospital ten days and suffered a pulmonary embolus, resulting from his surgery and bed rest. He was readmitted to the hospital for treatment for his embolus, which subsided. He remained in the hospital until February 14. At the time of the trial, the fusion was not solid; it was attended with pain and claimant was then 100 percent disabled. At the time of the trial, future prognosis was uncertain but statistically a solid fusion would result, in which event claimant will be 25 to 30 percent totally disabled, in terms of heavy labor. Fusion solidification should occur in a few months to a year. There was no medical evidence of total permanent disability.

There is pending herein a motion to strike from the appellee's brief Exhibits 2 and 3, being reports relating to the matter, one being the superintendent's report to Swift and Company and the other a medical report. These were not admitted into evidence nor considered by the jury. They will be stricken and not considered by the court. It was improper for counsel to inject evidence into the case by way of his brief, not admitted into evidence by the trial court or considered by the jury. In re Guardianship of Caffo, 69 N.M. 320, 366 P.2d 848; Linton v. Mauer-Neuer Meat Packers, 71 N.M. 305, 378 P.2d 126.

Numerous points are relied upon for a reversal of the judgment.

POINT I:

THE COURT ERRED IN REFUSING TO DISMISS CLAIM HEREIN, CLAIMANT NOT HAVING COMPLIED WITH CONDITIONS PRECEDENT TO THE FILING OF CLAIMS UNDER THE WORKMEN'S COMPENSATION ACT OF THE STATE OF NEW MEXICO PERTAINING TO NOTICE AND THERE BEING NO FAILURE OR REFUSAL BY EMPLOYER THE CLAIM HEREIN WAS PREMATURE.

It is claimed, as to this point, that the court erred in refusing to dismiss the claim as prematurely brought because of the claimant's failure to "give notice in writing of such accident and of such injury * * * within thirty (30) days after the occurrence thereof, * * *." § 59–10–13, N.M.S.A. 1953 (since repealed).

This statute further provided:

"* * * that no such written notice shall be requisite where the employer or any superintendent or foreman or other agents in charge of the work * * * had actual knowledge of the occurrence thereof. * * *"

It is admitted that following this accident on April 13, 1959, the accident was reported to claimant's supervisor, who was the employer's plant superintendent. Appellee was referred to Dr. Farrell who found the claimant was suffering from an acute lumbo-sacral strain. The treatment prescribed is hereinabove set out. He returned to work April 28, performing light duties for a few days and then returned to his normal duties until he was discharged on May 11. Other circumstances during this period have been set forth hereinabove.

This court is committed to the doctrine that the verbal reporting of the accident and injury to the employer or his agent, under the circumstances shown here, satisfies the requirement of written notice or actual notice in the statute. Buffington v. Continental Casualty Co., 69 N.M. 365, 367 P.2d 539; Winter v. Roberson Construction Co., 70 N.M. 187, 372 P.2d 381; Lozano v. Archer, 71 N.M. 175, 376 P.2d 963. We are also committed to the doctrine that actual knowledge of the accident or injury means knowledge of a compensable injury and involves more than the mere happening of an accident. Swallows v. City of Albuquerque, 59 N.M. 328, 284 P.2d 216. It is admitted herein that the claimant was paid compensation for the period of his temporary total disability only.

Appellant contends that after claimant returned to work he performed his duties without complaint; that claimant had never suffered an injury or took time off, and that appellant's superintendent had no reason to believe that claimant was suffering or had suffered any disability and had no notice, after claimant was released to work, of any disability. Admittedly, appellant reported the injury to the Industrial Commission as a slipped disc in the lower vertebrae. Admittedly, appellee's supervisor, from his experience with other employees was no stranger to the diagnosis and its possible or probable aftermath. On June 20, six weeks after appellee's supervisor had discharged appellee, the supervisor received the medical report from Swift's doctor, that the appellee would be unable to work for about three weeks. On June 29, appellant received a report showing appellee was treated at intervals from April 30 until May 7, and from May 14 until May 26. The fact that appellee was wearing a lumbar brace when he first returned to work and continued to wear it; the circumstances surrounding the taking of the release; his discharge; his alleged complaints of pain to his supervisor and

other circumstances in evidence, clearly point out a fact issue. The question here raised only becomes a question of law when the facts are not in dispute. Armijo v. United States Casualty Company, 67 N.M. 740, 357 P.2d 57; Linton v. Mauer-Neuer Meat Packers, supra.

Appellant relies largely upon three cases, namely, Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302; Swallows v. City of Albuquerque, supra, and Spieker v. Skelly Oil Co., 58 N.M. 674, 274 P.2d 625.

In the Ogletree case, the sole question was whether the employer had notice of the accident. Judge Brice dissented. Here, notice of the accident is admitted.

In the Swallows case, a latent injury was claimed to have been involved. As here, the employer had notice of the accident and we think from the facts set forth above there was evidence which at least should have put the employer on notice of a probable compensable injury and, in fact, compensation was paid for total temporary disability. The present suit was filed within the one-year statutory period, whereas in the Swallows case, the accident was in 1949 and the employer first received notice of a claimed latent injury in January, 1953. The jury found claimant was led to believe by the City Agent that compensation would be paid. On February 20, 1953 the City received a doctor's bill and was informed by Swallows that the bill concerned the 1949 injury. The bill was received by the insurance carrier March 17, 1953. Three days later, the claim was filed. The court held that under these circumstances, the claim was prematurely brought.

In the Spieker case, the claimant was injured on January 13, 1953. He returned to work January 22, 1953, after receiving compensation from January 22 to January 25. When he returned to work he told his employer he was cured. He performed all of his usual duties. This is not the case before us here. Here, the employee returned to light work after being released, and after working four hours was compelled to quit and return for medical treatment. When he next returned to work he was wearing a brace and, in light of all the facts as related above, we do not think this case is controlling. In the Spieker case, the court said, at 58 N.M. 680, at 274 P.2d 629:

"* * * When appellee returned to work and asserted to appellant that he was 'cured' and the company doctor had released him for work, *in the absence of any suspicious circumstances* the employer was entitled to accept such statement and by it be released of its duty to continue compensation payments. * * *" (Emphasis added).

It is interesting to note that Justice Compton dissented to the holding of the court that the claim was prematurely filed, with the inquiry, "Just where does the statute make provision for a second notice for the same injury?" In any event, it is suffi-

cient to say that an examination of the record indicates there was a conflict in the evidence upon this question and facts and circumstances which, in the opinion of the court, required this question to be submitted to the jury. It therefore was not error, under the circumstances, for the court to refuse to instruct a verdict for the defendant upon the first ground urged.

POINT II.

THE COURT ERRED IN REFUSING TO GIVE EMPLOYER'S REQUESTED INSTRUCTIONS PERTAINING TO THE ISSUE OF THE EMPLOYER'S FAILURE OR REFUSAL TO PAY COMPENSATION DUE AFTER ACTUAL KNOWLEDGE OR WRITTEN NOTICE OF A COMPENSABLE INJURY, PURSUANT TO WORKMEN'S COMPENSATION ACT OF THE STATE OF NEW MEXICO, SAME BEING NUMBERED 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 33, 34, and 35.

It is next urged that the Court erred in refusing to submit to the jury the issue of the employer's alleged failure or refusal to pay compensation after actual or written notice of a compensable injury as was requested by defendant's Instructions Nos. 19 to 28 inclusive, and 33 to 35 inclusive.

It is sufficient to say that many of the requested instructions were properly denied as not stating the law, and that not one of them, standing alone, properly submitted the issue. The issue, however, was certainly brought to the court's attention by the numerous requested instructions and it was the duty of the court to submit the issue under the evidence in the case.

The jury should have been instructed as contained in the requests, that under the statute existing at the time, the employer had 31 days within which to pay compensation after having written or actual knowledge through employee's superintendent, of the accident and that plaintiff suffered a compensable injury arising out of and in the course of his employment; that actual knowledge under the Act, to excuse written notice, means not only knowledge of the accident but also knowledge that the accident resulted in a compensable injury; that if the jury found that on April 13, 1959, the claimant received an accident in the course of his employment, of which his employer had notice, but failed to find from the evidence that defendant had actual notice or knowledge as a result of the accident, the plaintiff suffered a compensable injury extending after the period for which he was paid temporary total disability, until February 25, 1960, the date the suit was filed, then the claim was prematurely filed, and the jury should find for the defendant.

The cases involving this subject are fully discussed by Justice Moise in Wilson v.

Navajo Freight Lines, 73 N.M. 470, 389 P. 2d 594, and more recently by Justice Carmody in Sanchez v. James H. Rhodes & Co., N.M., 391 P.2d 336.

The refusal of the court to submit the issue of notice, under the evidence set forth herein, was reversible error.

POINT III:

THE JURY'S VERDICT IS CONTRARY TO AND NOT SUPPORTED BY THE EVIDENCE IN REGARD TO THE EXTENT AND DURATION OF CLAIMANT'S DISABILITY.

■ In view of the possibility of another trial herein, it is proper to point out that the verdict of the jury, that claimant was totally and permanently disabled for 115 weeks or approximately from the date of his injury to the date of the trial, is contrary to the undisputed testimony in the case.

While there was no definition of total disability in the Workmen's Compensation Act of this state prior to the 1959 amendment, the Supreme Court had consistently held that:

"Total disability, within the Workman's Compensation Act, may be said to exist when, considering the age, education, training, general physical and mental capacity and adaptability of the workman, he is unable by reason of his accidental injury to obtain and retain gainful employment." Rhodes v. Cottle Construction Co., 68 N.M. 18, 357 P.2d 672.

See also, Seay v. Lea County Sand and Gravel Co., 60 N.M., 399, 292 P.2d 93; Ruiz v. Hedges, 69 N.M. 75, 364 P.2d 136; Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777.

Returning to the record, the undisputed facts in the case show that the claimant was discharged by Swift and Company on May 12, 1959. On May 22, 1959, he went to work for San Bar Construction Company as a laborer and carpenter's helper, which involved handling beams, sawing boards and generally doing heavy labor. He worked until July 15, 1959, at which time he was employed by the Kaler Packing Company until September 15, 1959 doing the same kind of work he did when he worked for Swift and Company. He was fired for drinking. On September 19, 1959, he secured work at San Bar Construction Company and worked until October 21, 1959. His activities during November do not appear from the record; however, on December 11 he again went to work for San Bar Construction Company and worked until March 20, 1960, at which time he fell from a tractor and reported to his employer that he had hurt his back or shoulder. He returned to work at San Bar Construction Company on the week ending June 16, 1960.

In the interim, he had worked for Morris Brothers one and one-half months hauling blocks and mortar in a wheelbarrow. He worked for San Bar Construction Company from June 16 until September 14, 1960, during which time he handled beams, set forms, drove a tractor, worked on a surveying crew, drove stakes, and various other heavy work. He was laid off in September and did not work up to the date of the trial.

From the foregoing facts, it is clear that from May 22, 1959 until September 14, 1960, while appellee suffered pain, he was not thereby prevented from working and doing work of a type which he had done for Swift and Company and was not prevented by his injury from "obtaining and retaining" gainful employment.

From the foregoing, it is also apparent that the verdict of the trial jury finding claimant totally and permanently disabled for 115 weeks prior to the time of the trial and during the period above set forth, is contrary to the undisputed evidence in the case, and should be vacated and set aside. Ruiz v. Hedges, supra.

The evidence shows that appellee was substantially and continuously employed in comparable work, except for short intervals, from May, 1959, to September, 1960.

Evans v. Stearns-Roger Mfg. Co. (10 Cir., 1958), 253 F.2d 383, cited by appellee, is not in point. There the claimant had to go to work in a field far removed from that in which he was engaged when he was injured, and his disability prevented him from performing his previous occupation. In the present case, the appellee was capable of performing and did perform for Kaler Packing Company the same kind of work he had performed for Swift and Company and all of the work he performed was hard, manual labor of a type he had been accustomed to doing.

Nothing herein is inconsistent with any of the cases cited by appellee. In Hanks v. Walker, 60 N.M. 166, 288 P.2d 699, the quotation in appellee's brief, pages 36 and 37, is incomplete. In that case, it appears that the court had given a proper instruction on total disability and on partial disability, to neither of which the defendant made an objection. The defendant had requested an instruction contradictory to and inconsistent with the court's instruction by omission from the requested instructions of any mention of appellee's ability to retain employment. The entire quotation reads:

"The mere belief on the part of a workman that he is able to return to work is not sufficient to prevent his being entitled to compensation. If a workman so believing returns to work but finds he is in constant pain while working, then he is not in a condition which will cause his compensation for an injury to cease."

We find nothing in this full quotation contradictory to our holding herein.

In Smith v. Spence and Son Drilling Co., 61 N.M. 431, 301 P.2d 723, the facts were that plaintiff whose experience had been limited to a background of heavy manual labor was unable to do anything but light work. This is inconsistent with the undisputed testimony in the case before us.

In Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864, the question did not arise under the Workmen's Compensation Act but under an insurance policy and it was held that the evidence was sufficient to take to the jury the question of whether the insured was totally and presumptively permanently disabled under the policy provision, by an arm injury necessitating an amputation of all the fingers and the thumb of his left hand, rendering him unable to do any outside work he had customarily done.

In Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000, the claimant was shown by the proof never to have been unable to perform the work which he had previously done and for which he was trained and to which he was accustomed.

In Ruiz v. Hedges, supra, the court said: "By no stretch of the imagination can evidence or inferences be found in the proof in this case that claimant was unable for any reason 'to obtain and retain gainful employment.' On the contrary, it is uncontroverted that he was continuously employed in the same

or comparable work without loss of time, except for three weeks. True, he suffered some pain and had to refrain from heavy lifting which so far as the evidence discloses in no way interfered with his employment. Under these circumstances we must conclude that the evidence viewed in the light most favorable to appellee and in support of the verdict does not to any substantial degree support a holding of total and permanent disability."

We think this rule fully applies to the situation here. The verdict of the jury finding that claimant was totally and permanently disabled for the 115 weeks prior to the time of the trial is vacated and set aside as unsupported by any substantial evidence in the case and contrary to the undisputed facts in the case.

POINT IV.

THE COURT ERRED IN GIVING INSTRUCTIONS NUMBERED 6, 8, 13 and 14.

POINT V.

THE COURT ERRED IN REFUSING TO GIVE EMPLOYER'S REQUESTED INSTRUCTIONS NUMBERED 7 and 8 PERTAINING TO RELEASE.

Instructions 6 and 8 given by the court, and Instructions 7 and 8 requested by the appellant and denied by the court, all relate

to the purported release involved in this case. It will be seen that each party, from the requested instructions, deemed the issue of the validity of the release one for the jury.

The record indicates the purported release is on form I.C.N.M. No. 5, entitled "Final Receipt to the Labor and Industrial Commission of New Mexico." It reads as follows:

"Received of Swift and Company, the sum of Thirty-Five Dollars and 30 Cents ($35.30) being compensation from 4/21/59 to 4/26/59 inclusive, making in all, with former payments the total sum of $35.30 for 5/6 weeks at $42.35 per week in full settlement of compensation under the Workmen's Compensation Act, for all injuries received by me on or about 4/13/59 while in the employ of Swift and Company, subject to approval by the Labor and Industrial Commission of New Mexico.

Dated at Albuquerque, New Mexico, this 5th day of May, 1959.

/s/ Teofilo T. Baca
Injured Employee sign here"

The check for payment reads as follows:

"Swift and Company
Casualty Department
309 West Jackson Boulevard
Chicago 6, Illinois
Draft No. 905111
April 29, 1959

Pay $35.30 being in full settlement of the items stated on attached voucher.

Pay to the Order of
Teofilo Baca
1024 La Voga SW
Albuquerque, New Mexico

Present through
Drovers National Bank
Chicago, Illinois

Swift and Company
/s/ R. W. Broden"

It was endorsed by the payee.

The voucher attached to the draft reads as follows, insofar as material hereto:

| "Description | Claim Number | Amount |
|---|---|---|
| Temporary total compensation 4–21–59 to 4–26–59, inclusive (5/6 weeks) Rate $42.35 per week.  Acc. 4–13–59 | 140200 | $35.30 |

| | Swift & Company | Number |
|---|---|---|
| | Casualty Department | 905111" |

Taken together, it is clear that the check and release plainly purport to be no more than payment for temporary total disability compensation for 5/6 week, during the period of his first absence following his accident.

The evidence shows the defendant's policy was to continue paying an injured employee a salary and require the employee to restore this to the extent of the compensation paid. This is what occurred under the evidence in this case. The circumstances under which the release was executed are clear from the record.

Under these facts, the court should not have submitted the defense of the alleged release to the jury. The disability of which plaintiff complains appeared after the release for temporary total disability was executed. Harlow v. Hare, 51 N.M. 326, 184 P.2d 300; Linton v. Mauer-Neuer Meat Packers, supra.

Nothing herein is repugnant to our decisions in Mendenhall v. Vandeventer, 61 N.M. 277, 299 P.2d 457; Ritter v. Albuquerque Gas & Electric Company, 47 N.M. 329, 142 P.2d 919, 153 A.L.R. 273, or Moruzzi v. Federal Life & Casualty Company, 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407, upon two of which cases appellant relies.

The issue relating to the release should have been withdrawn by the court and, certainly, if the court submitted the issue from appellee's point of view, it should have submitted the issue from appellant's point of view.

Appellant complains of the action of the court in instructing the jury (No. 13) as follows:

"13. If you find that the Claimant suffered an injury on April 15, 1959, for which he should be compensated and that the surgery performed in January of 1961 proximately resulted from this injury then you may consider the thrombus which developed in the Claimant's right leg following this surgery and the embolus which developed in his right lung. If you find that these conditions resulted from enforced bed rest as a result of the surgery to the Claimant's back then you may consider these conditions and any future disability which they may involve in arriving at your verdict." This date should have been April 13, 1959, but no objection on that ground was taken.

We see no error in the giving of this instruction and under the evidence in the record the jury had a right to determine the effect of the operation and the embolus following it, in determining the extent of appellee's disability, if they found the operation resulted from the injury complained of. The matter was properly before the jury under the medical evidence in the case.

Appellant claims the court erred in giving Instruction No. 14, which is as follows:

"14. You are instructed that if you find that the most probable cause of the injury which was sustained by Teofilo Tom Baca has been established by him, it is not incumbent upon him by his evidence and the evidence of others testifying in the case to exclude all other possible causes of said injury."

We see no error in this instruction. It would perhaps have been clearer if the court had pointed out that the alleged injury of April 13, 1959 was the most probable cause, but this is covered in other instructions of the court and the jury could not have been misled when the instructions are considered as a whole. The instruction follows the decision of the court in Gilbert v. E. B. Law and Son, Inc., 60 N.M. 101, 287 P.2d 992, and Elsea v. Broome Furniture Company, 47 N.M. 356, 143 P.2d 572. It is not inconsistent with the case of Clower v. Grossman, 55 N.M. 546, 237 P.2d 353, cited by appellant.

POINT VI.

THE JURY'S VERDICT IS CONTRARY TO AND NOT SUPPORTED BY THE EVIDENCE:

(A) WITH REGARD TO CAUSATION OF CLAIMANT'S DISABILITY.

(B) WITH REGARD TO RELEASE AND SETTLEMENT.

In view of the fact that the cause is to be reversed and a new trial granted, it is not necessary to pass upon Point VI (A). This opinion has heretofore disposed of Point VI(B).

The cause is reversed and remanded to the lower court with instructions to set aside the judgment entered below, and grant the defendant a new trial. Allowance of attorney fees on appeal is denied. It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.