440 P.2d 291

Perez ROYBAL, Plaintiff-Appellee,

v.

COUNTY OF SANTA FE, Employer, and Mountain States Mutual Casualty Company, Insurer, Defendants-Appellants.

No. 8528.

Supreme Court of New Mexico.

May 6, 1968.

Jones, Gallegos, Snead & Wertheim, Santa Fe, for appellants.

Edwin L. Felter, Santa Fe, for appellee.

## OPINION

CARMODY, Justice.

In this workmen's compensation proceeding, the trial court entered an award of total permanent disability, and the defendants appeal.

The claimant was the sheriff of Santa Fe County, New Mexico. He took office on January 1, 1963, and served until December 31, 1966. On September 12, 1964, he was seriously injured in a car wreck, suffered in the course of his employment. Following hospitalization and home convalescence, which exceeded four months, he returned to his office on a part-time basis. In May of 1965, he resumed full-time office work, although he was never able to perform all of the tasks which he had rendered prior to the injury. He did, however, supervise investigations by his deputies, hired and fired personnel, managed the budget, did some driving of cars, and applied his knowledge to the business of law enforcement. During the entire period, he was paid full salary as the duly-elected sheriff. The insurer paid him disability benefits for a period of seventeen weeks, and, in addition, furnished substantial medical benefits. Upon the filing of the claim, defendants denied liability, claiming that the disability was not the natural and direct result of the accident. The trial court found that the injuries resulted in total permanent disability and that even though he had continued to draw his salary, his earning capacity had been destroyed, both presently and for the future.

It is of interest to note, although neither of the parties make any objection thereto, that the trial court found that the vehicle which was being driven by the plaintiff was equipped with a seat belt, "which is a safety device," but that "plaintiff did not have his seat belt on." As a result, the trial court reduced plaintiff's compensation by ten per cent for failure to use a safety device, in accordance with § 59–10–7(A), N.M.S.A. 1953.

The defendants' initial attack on the judgment is that the findings of total permanent disability and destruction of future earning capacity are not supported by substantial evidence. The applicable statute now appears as § 59–10–12.18, N.M.S.A.1953 (1967 Pocket Supp.), which reads:

"As used in the Workmen's Compensation Act [59–10–1 to 59–10–37], 'total disability' means a condition whereby a workman, by reason of an injury arising out of, and in the course of, his employment, is wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience."

■ The main thrust of defendants' attack on the findings is that opinion testimony, given by a medical expert, should not be considered as substantial evidence upon which a finding of total disability can be predicated. Defendants readily admit that there was medical testimony in this case that the claimant was totally disabled, this having been elicited from the last two expert witnesses.

■ Ortega v. New Mexico State Highway Department, 77 N.M. 185, 420 P.2d 771 (1966), was a case in which we held that the doctor's opinion testimony was substantial evidence for a finding of 80% partial permanent disability. Defendants urge that the rule in Ortega should not be extended to total disability cases. We are unable to agree, as we see no reason why there should be a different rule in the determination of the two types of disability— total and partial. Merely because the legislature saw fit to define total disability and partial disability in separate sections (§ 59–10–12.18, supra, and § 59–10–12.19, N.M. S.A.1953 (1967 Pocket Supp.)), does not justify a differing measure of proof. Actually, a comparison of the two sections above noted makes it plain that they are substantially identical in verbiage, except that the total disability statute refers to "wholly unable to perform" and the partial disability states "is unable to some percentage-extent to perform." To hold as argued by defendants would be to have two different measures of substantial evidence and thereby cause untold difficulty in the trial of workmen's compensation cases. We do not agree with defendants that the construction announced in Ortega, supra, and which we

here approve, allows a medical witness to make the adjudication of total disability. The determination of total disability (and partial, of course) under our law is always for the fact-finder. There being substantial evidence to support the findings attacked by the defendants, we find the point without merit.

There is nothing to the contrary in Baca v. Swift & Co., 74 N.M. 211, 392 P.2d 407 (1964); Snead v. Adams Construction Co., 72 N.M. 94, 380 P.2d 836 (1963); Ruiz v. Hedges, 69 N.M. 75, 364 P.2d 136 (1961); or Rhodes v. Cottle Construction Co., 68 N.M. 18, 357 P.2d 672 (1960). These cases involved entirely different circumstances, each lacking that element of substantial evidence necessary to sustain a verdict.

Defendants next challenge the ruling of the trial court, arguing that, even if the findings are correct, the wrong standard was applied in measuring disability. It is here seriously urged that the trial court failed to consider the claimant's abated disability by reason of medical treatment. In addition to the above facts, we observe that the sheriff developed an anxiety reaction, a type of psycho-neurosis. He was placed under the care of a psychiatrist and on two occasions hospitalized for several days. He was put under medication and was released as feeling better, but told he must remain on medication. It is apparent the failure of the plaintiff to take the medicine resulted in the second period of hospitalization. The trial was held shortly thereafter, and at that time plaintiff's disabling symptoms were under control. Defendants question the total permanent disability determination on the basis that the abatement of the anxiety reaction was sufficient to reduce plaintiff's disability to less than total, but that the trial court failed to give it adequate consideration.

 It is true that if the psychoneurosis had been the only basis of disability, there might be some merit to the argument; but here, plaintiff's disability consisted of injury to his head, brain, back, ribs, spinal cord, nervous system, and men-

tality. The court's finding to this effect is not challenged, and when it is considered together with the court's finding that plaintiff's earning capacity and ability had been destroyed to such an extent that he would be unable to obtain or retain gainful employment as a peace officer, or in any other economic field in which he otherwise would have been able to perform, then it is obvious the court did not feel medical abatement of the symptoms did anything toward reducing the disability from less than total. The award was based upon permanent injuries, not the outward manifestation, or lack thereof, of the symptoms resulting from the injuries. Having found total disability, it was not necessary for the trial court to make a negative finding with respect to the symptoms alone. In any event, the denial of defendants' requested findings directed to this issue is regarded as a finding against them. Herrera v. C & R Paving Company, 73 N.M. 237, 387 P.2d 339 (1963); Coseboom v. Marshall Trust, 67 N.M. 405, 356 P.2d 117 (1960); and Farrar v. Hood, 56 N.M. 724, 249 P.2d 759 (1952). The finding of total permanent disability is supported by substantial evidence; that the outward manifestations of the anxiety reaction could be controlled by medication does not alter the fact that plaintiff still was unable to perform any type of work such as he had formerly been able to do, or which, by reason of his age, mental condition, training and experience, he would have been able to do.

It should be obvious that, because of the brain damage and sensory loss over the entire right side of the plaintiff's body, he was unemployable in any field of endeavor in which he had had experience. In Quintana v. Trotz Construction Co., 79 N.M. 109, 440 P.2d 301, decided March 4, 1968, we said:

"* * * under our statute if he can no longer do the work he was doing when injured, and cannot do the only work for which he is qualified, he is 'legally' totally disabled. Compare Reynolds v. Ruidoso Racing Ass'n, Inc., 69 N.M. 248, 365 P.2d 671 (1961). * * *"

Finally, defendants argue that should we find there was no error in awarding total permanent disability, a credit should be ordered for each week after the accident that the employer paid claimant his regular salary as sheriff. The thrust of defendants' contention is that if the wages were not being earned, they must be considered as having been paid in lieu of compensation, for otherwise they would be a gratuity.

/ The issue presented is one of first impression in New Mexico. We reiterate our holding above—total permanent disability was proper by reason of the destruction of claimant's capacity to perform work. Quintana v. Trotz Construction Co., supra.

There is a divergence of opinion concerning the allowance of credits. See Annots. at 119 A.L.R. 920 (1939); 175 A.L.R. 725 (1948), supplemented in 84 A.L.R.2d 1108 (1962). We are of the opinion that the allowance of credit is dependent on the employer's intention, and that in determining intention, "wages" and "compensation" are to be considered in accordance with the following usage of those terms:

"* * * 'Compensation' of an employee in the form of wages or salary for services performed, does not have the same meaning as the word 'compensation' in the Workmen's Compensation Act. The former is remuneration for work done; the latter is indemnification for injury sustained. * * *" Hawthorn v. City of Beverly Hills, 111 Cal. App.2d 723, 245 P.2d 352 (1952).

Accord, Baker v. Standard Rolling Mills, Inc., 284 App.Div. 433, 131 N.Y.S.2d 739 (1954). The question is one of determining whether the wages here were paid in lieu of disability payments. In arriving at an answer, it is necessary to characterize payments made during the period of employment subsequent to the injury. This characterization turns on the facts of each case. Madison v. American Sugar Refining Co., 243 La. 408, 144 So.2d 377 (1962).

We think the following criteria for such characterization, suggested in 2 Larson, Workmen's Compensation Law, are sound:

"If the payment of wages was intended to be in lieu of compensation, credit for the wages is allowed. However, since there is seldom any direct evidence on whether such an intention lay behind the payment, it must be inferred from the circumstances surrounding the payment." Sec. 57.41, p. 18.

"The most important of these circumstances seems to be the question whether the injured man really earned his wages. If he is paid his regular wage although he does no work at all, it is a reasonable inference that the allowance is in lieu of compensation. An occasional court will say that such a payment is to be deemed a gratuity, but this, in the absence of special facts indicating a charitable motive, is unrealistic. * * *

"The same principle applies when the employee is given light or reduced work at his old pay. If that rate of pay is not ordinarily offered to workers performing those duties, the expenditure can only be explained as provision of regular financial benefits to a work-injured man—in other words, workmen's compensation.

"By contrast, if the man is giving a dollar's worth of labor for every dollar he is paid, the intention of the employer cannot be said to be that of supplying a substitute for workmen's compensation; it is simply to purchase these services from this man on the same terms as from any other man. Therefore credit is usually disallowed when it can be shown that the claimant earned the wages he was paid during the period in question. * * *" Sec. 57.42, pp. 18–20.

In applying such criteria to the facts of this case, we do not believe credit must be allowed. In the first place, we are dealing with a case in which the claimant performed some limited services at all times other than during the initial period of seventeen weeks following the accident. Likewise, the fact that claimant was performing services, and the lack of proof in the record to indicate a gratuitous motive, is persuasive that no gratuity was intend-

ed. Therefore, we turn our attention to the question of whether claimant earned his wages.

This case is distinguishable from any of those cited, or disclosed by our research, because here the plaintiff was an elected official. His right to the office of sheriff was set by statute and was to continue, unless removed, until his successor qualified. N.M.Const., art. XX, § 2. His minimal duties were as provided by statute, see § 15–40–2, N.M. S.A.1953, and cross-references thereunder cited. Thus the ultimate decision regarding satisfactory performance rests with the electorate, unless removed in a proper case. Here plaintiff was actually re-elected to the office of sheriff during the initial period when he was totally unable to perform any service at all; in addition, there is nothing in the record which even intimates that there was any action taken directed towards plaintiff's removal. The effect of defendants' contention, if it were to be accepted, would be to reduce plaintiff's salary as sheriff by reason of the workmen's compensation payments. Such an argument is untenable. As stated, compensation is indemnification for the injury sustained. This has nothing to do with the salary. As a matter of fact, it is generally held that the salary of a public officer attaches as an incident to the office itself, and the right to receive the same is not necessarily impaired by absence from the office or temporary incapacity to perform the duties of the office. Hanchey v. State ex rel. Roberts (Fla.1951), 52 So.2d 429; State ex rel. Randel v. Scott, 95 Ohio App. 197, 118 N.E.2d 426 (1952); and Webb v. City of Hugo, 169 Okl. 438, 37 P.2d 621 (1934). The remedy for derelictions is by way of removal, impeachment and punishment as provided by law. Webb v. City of Hugo, supra.

Aside from the seventeen weeks of hospitalization and convalescence, plaintiff performed some of the duties required of him, although, of necessity, he was unable to perform the duties personally and his services were mainly of an administrative type involving direction of his deputies. Nevertheless, he performed a service, and we conclude the wages he received were earned. In this context, it would be inconsistent to attribute to the employer an intention that the payments were in lieu of compensation.

The question of plaintiff's capacity to perform work acceptable to an employer is one properly left for the fact-finder, and here the trial court determined this issue in favor of the plaintiff. We are satisfied that such a finding is supported by substantial evidence. Therefore, the wages having been earned, there was no error in denying credit. Department of Motor Vehicles of California v. Industrial Accident Commission, 14 Cal.2d 189, 93 P.2d 131 (1939); Postal Telegraph Cable Co. v. Industrial Accident Commission, 213 Cal. 544, 3 P.2d 6 (1931); Madison v. American Sugar Refining Co., supra; Lindsey v. Continental Casualty Co., 242 La. 694, 138 So.2d 543 (1962); compare Travelers Insurance Co. v. Walkovak (Tex.Civ.App. Houston, 1965, Ref. n. r. e.), 390 S.W.2d 75.

There is nothing to the contrary to that which we have hereinabove said in Salazar v. Lavaland Heights Block Company, 75 N.M. 211, 402 P.2d 948 (1965); Cordova v. City of Albuquerque, 71 N.M. 491, 379 P.2d 781 (1962); or Hathaway v. New Mexico State Police, 57 N.M. 747, 263 P.2d 690 (1953), none of these cases having considered the precise issues here involved.

As a matter of fact, it would be somewhat difficult to sustain defendants' reasoning because of the judicial and legislative history of the requirement for timely filing of workmen's compensation claims. In Cordova v. City of Albuquerque, supra, this court, by decision, approved a tolling of the time for filing a claim during the period that the workman was employed. Thus, if the statute in effect at the time of Cordova (ch. 67, § 10, Sess.Laws of 1959, § 59–10–13.6, N.M.S.A.1953) had still been the law at the time of the instant accident, the plaintiff would probably not have been required to file his claim until the expiration of his term as sheriff. However, after the Cordova decision, the legislature enact-

**104**

ed ch. 269, § 6, Sess.Laws 1963, which, so far as pertinent, stated:

"'This one-year period of limitations ..shall *not be tolled* during the time a workman is employed * * *.'" (Emphasis added.)

This provision required plaintiff to file his claim within one year after the refusal to pay compensation, and in view of the absence of any declaration by the legislature with respect to credits, it would follow that no provision for credit was contemplated. We would note in this connection that ch. 151, § 1, Sess.Laws 1967, amended the above language to place the law back where it had been prior to the 1963 act, as the 1967 session provided that the period of limitations "shall be tolled." Thus, in the future, the exact problem should not again arise.

Plaintiff will be awarded $1,000.00 for the services of his attorney on this appeal.

The judgment will be affirmed. It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.