**SELECT INSURANCE CO., Appellant,**

v.

**Thomas Earl BOUCHER, Appellee.**

**No. 16808.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 10, 1977.

Rehearing Denied April 7, 1977.

Boswell, O'Toole, Davis & Pickering, Robert G. Taylor, II, Susan E. Crowley, Mike Phillips, Houston, for appellant.

Miller, Gann & Perdue, Gerald H. Buttrill, Houston, for appellee.

COLEMAN, Chief Justice.

Select Insurance Co., defendant in the trial court, appeals from a judgment entered on a jury verdict awarding the plaintiff workmen's compensation based on the finding of six and three-fourths years total incapacity. The defendant plead that the injuries suffered by the plaintiff, if any, resulted in partial disability for only a very short period of time, that the plaintiff's earning capacity was and has been as much or more per week as it was before the date of the alleged injury and that there was no reduction or decrease in his wage earning capacity since that time. Since the plaintiff had not sought recovery for any period of partial incapacity, the trial court refused issues requested by the defendant submitting partial incapacity as a defense. The court also refused to submit a requested instruction defining the term "partial incapacity."

A question arises as to whether the trial court properly submitted the case to the jury as required by Rule 277, Vernon's Annotated Rules of Civil Procedure, which prohibits the submission of inferential rebuttal issues. The same rule, however, requires that the court submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict.

■ Prior to September 1, 1973, when the amended version of Rule 277, Vernon's Annotated Rules of Civil Procedure, went into effect, it was well established that partial incapacity was a defense to a claim for total incapacity. Where such a defense was raised by the evidence the defendant was entitled to an affirmative submission of the issue. *Wright v. Traders & General Ins. Co.*, 132 Tex. 172, 123 S.W.2d 314 (1939). In the case above cited the court said:

"It is true that a finding of total incapacity excludes the converse of partial incapacity, and vice versa. In that sense converse issues are involved. The issues submitting the two inquiries as to the result of the injuries,—one whether total and the other whether partial,—are converse, but not opposite . . . It is necessary in cases involving converse issues to submit both, notwithstanding partial duplication may result; . . ."

■ An inferential rebuttal issue, which should not be submitted under Rule 277, T.R.C.P., is one which disproves the existence of an essential element submitted in another issue. *Wirtz v. Orr*, 533 S.W.2d 468 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.). Where an issue is submitted on partial incapacity merely to rebut plaintiff's claim that he is totally incapacitated, it is an inferential rebuttal issue. Hodges, Special Issue Submission in Texas, Section 16, p. 44.

■ The plaintiff did not seek compensation for partial incapacity in this case. The defendant plead partial incapacity as a defense. The trial court properly refused the issues requested by the defendant presenting its defense of partial incapacity because they were inferential rebuttal issues.

■ Rule 277, supra, requires the trial court to submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict. Inferential rebuttal matters should be submitted to the jury by way of instructions. *Gulf Insurance Co. v. Hodges,* 513 S.W.2d 267 (Tex.Civ.App.—Amarillo 1974, no writ history). Rule 279, Texas Rules of Civil Procedure, provides that the failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment.

■ The defendant requested that the trial court submit the following definition of partial incapacity:

> "'PARTIAL INCAPACITY' means any degree of incapacity less than total incapacity; or, whereby a person suffers a reduction in earning capacity. A person cannot have both total and partial incapacity at the same time."

The definition requested is not in substantially correct form. The insertion of the word "or" following the words "total incapacity" renders the definition confusing. The term "earning capacity" is not defined. A proper definition of the term "partial incapacity" which eliminates the need for a definition of the term "earning capacity" is found in Texas Pattern Jury Charges, Vol. 2, Section 22.02. This definition reads:

> "Partial incapacity is any degree of incapacity less than total incapacity, and means that a person's earning capacity is reduced because he can perform only part of the usual task of a workman or can only do lower paying work than he could do before his injury, but can get and keep employment suitable to his condition."

See *Southern Underwriters v. Schoolcraft,* 138 Tex. 323, 158 S.W.2d 991 (1942)· *Whaley v. Angelina Casualty Co.,* 423 S.W.2d 448 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). The failure of the trial court to incorporate in its charge a proper definition of the term "partial disability" is not reversible error.

Appellant asserts error on part of the trial court in admitting deposition testimony of Dr. Belz, a psychiatrist, because his opinion testimony was based on hearsay. The record reflects that Dr. Belz first saw appellee on March 11, 1974. At that time he conducted a verbal interview. He later obtained a history of appellee taken by the case worker in the social service department of Jeff Davis Hospital who had talked with appellee's parents. Appellee was admitted to Jefferson Davis Hospital on March 11, 1974, and remained there until discharged on April 19, 1974. Dr. Belz was his treating physician. He testified that after the initial interview on March 11, 1974, "there were sufficient symptoms of a thought disorder at that time without any supporting history to make a tentative diagnosis of schizophrenia." He stated, "After putting together the history with the mental status findings the final diagnosis that I made was gross stress reaction manifested by psychotic decompensation." He further testified that, based upon the history he obtained, his own examination and tests and his training and experience, the problems the plaintiff suffered were caused by the back injury and would prevent appellee from obtaining employment which would require him to perform the usual tasks of a workman.

■ Dr. Belz was a treating doctor, and his testimony was predicated both upon his personal knowledge and upon hearsay. This testimony was admissible. *Combined Ins. Co. of America v. Kennedy,* 495 S.W.2d 306 (Tex.Civ.App.—Eastland 1973, writ ref'd n. r. e.); *Texas Employers Ins. Association v. Rogers,* 368 S.W.2d 21 (Tex.Civ.App.—Amarillo 1963, writ ref'd n. r. e.); *Gray v. Bird,* 380 S.W.2d 908 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.).

The insurance company also asserts that the trial court erred in admitting certain testimony by plaintiff's father stating his opinion as to the future duration of appellee's disability. There was testimony that Mr. Boucher was a carpenter and that his son, the plaintiff, worked with him as a carpenter's helper on a job with the Cre-

chett Company. Mr. Boucher was asked whether he thought that his son could go back to a company such as Crechett and hold a job, and answered "No, sir." There was no objection to this question. He was then asked whether he thought his son could go back to a company such as R. D. A. C. Company. This was another company where they had both worked previously. The answer given was, "No, sir." An objection was made on the ground that the witness was not qualified to answer whether someone else may or may not hire his son. It was overruled. A number of objections made on the ground that the question called for hearsay were sustained by the trial court. No objections based on hearsay were overruled.

■ The only mention of any error in relation to Mr. Boucher's testimony in appellant's motion for new trial was:

"The court erred in admitting into evidence the hearsay testimony of plaintiff's father over the strenuous objection of counsel for the defendant."

This ground for a new trial was untenable. An assignment of error in a motion for new trial which does not embody the complaint raised on appeal is not sufficient to preserve error. *Royal Indemnity Co. v. Hume,* 477 S.W.2d 683 (Tex.Civ.App.—San Antonio 1972, no writ history).

■ The jury found that the plaintiff was totally incapacitated for six and three-fourths years. The insurance company contends that this finding is contrary to the great weight and preponderance of the evidence. This assignment of error requires that we consider the entire record.

Thomas Earl Boucher graduated from high school in 1972. After graduation he worked as a carpenter's helper for three different companies. In November of 1973 Thomas went to work for New Process Steel Corporation as an assistant steel slitter. His duties consisted of picking up scraps of steel that were left on the machine after the cutting process. On January 15, 1974, while in the course of his employment, Thomas was struck in the back by a hook attached to an overhead crane.

The next morning he went to work and was sent to Dr. Pena, the company doctor. Dr. Pena's records for that visit carried a notion, "given slip for employer to return to work tomorrow." Thomas did not return to work but saw Dr. Pena again on six occasions, the last being February 13. The doctor noted improvement and recommended that Thomas return to work. He went back to work for only one day. After the last visit, Dr. Pena referred Thomas to Dr. Whitsell, an orthopedic surgeon, who suggested a muscle relaxer and exercise program.

In March, 1974, Thomas became quiet and noncommunicative. At one point he started wearing his brother's Air Force uniforms and told his father he was in the Air Force. As a result of this behavior, Mr. Boucher took Thomas to Ben Taub Hospital where he was examined by a psychiatrist. The psychiatrist recommended Thomas be admitted for psychiatric analysis and treatment. A few days later Thomas was committed to Jeff Davis Hospital where he remained for four to five weeks. When released from Jeff Davis, Thomas went to Bartlett House, a halfway house for people with emotional problems. He remained at Bartlett House for three to four months undergoing therapy. Thomas is presently seeing a psychiatrist every six months.

In addition to the testimony previously recounted Dr. Belz testified that he felt that there "was still sufficient disability where it would be unlikely to expect him (plaintiff) to be fully functional or as functional as he was in job sense prior to his injury. His emotional state is such that he can probably only tolerate minimal amounts of stress . . . I would hope that with all conditions being optimal perhaps in three to five years he might again reach a fully functional state." The doctor also testified that after several years appellee might be recovered to the extent that he could get a job with a moderate degree of challenge and have the strength to perform in such a way as to keep it. He said: "I

don't think he is going to have that capacity for several years, though."

The plaintiff's father testified that Thomas "has lost his mechanical aptitude and his knowledge of mechanical work such as carpentry or even working with small hand tools." He said that Thomas could be told and shown what to do but can't take any responsibility on his own.

The plaintiff has had five jobs since the injury and was earning more money at the time of the trial than he did prior to the injury. When plaintiff applied for a job at the Museum of Fine Arts as a watchman he stated in his application that he had no physical handicaps and had missed only four days of work in the past twelve months due to illness. Dr. Belz wrote a letter to the director of dietary division, Methodist Hospital, recommending appellee for a position. The letter stated that with training and supervision appellee would be a suitable employee.

■ The term "total incapacity" does not imply an absolute disability to perform any kind of labor. A person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is considered totally disabled. The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular trade or occupation. *Texas Employers Ins. Ass'n v. Mallard,* 143 Tex. 77, 182 S.W.2d 1000 (1944). A finding of total incapacity is not precluded merely because the claimant has worked subsequent to the injury. This merely presents a fact to be considered by the jury in passing upon the extent and duration of the injury. *Texas Employers Ins. Ass'n v. Evers,* 242 S.W.2d 906 (Tex.Civ.App.—Amarillo 1951, writ ref'd n. r. e.); *Texas Employers Ins. Ass'n v. Hawkins,* 387 S.W.2d 469 (Tex.Civ. App.—Amarillo 1965, writ ref'd n. r. e.).

■ Since his release to the halfway house the plaintiff has held five jobs. The first job was temporary help at the hospital. The second job required that he do light yard work and assist with maintenance on air conditioning equipment. He had secured a position at the Museum as an unarmed guard. Finally he was able to obtain work with two different companies shampooing carpets. A reasonable man might question whether these jobs demonstrated that the plaintiff was able to procure and retain employment. The medical evidence presented by the insurance company related to the plaintiff's physical condition. The testimony concerning plaintiff's mental condition constituted a sound basis for a finding that the plaintiff would be unable to secure and retain employment. Dr. Belz' testimony was sufficient to authorize the finding of six and three-fourths years' duration of disability. The finding of the jury was not contrary to the great weight and preponderance of the evidence.

■ The insurance company's final point urges that the trial court erred in referring to Dr. Belz as an expert in the presence of the jury. The company objected at the time and the trial court instructed the jury to disregard this statement that he made in error. The evidence shows that Dr. Belz was a fully qualified expert in psychiatry. This mishap upon the part of the trial court was not such an error as was calculated to and did result in the entry of an improper judgment.

The judgment is affirmed.