595 P.2d 1204
597 P.2d 1178

**Santiago S. MAREZ, Plaintiff-Appellee,**

v.

**KERR–McGEE NUCLEAR
CORPORATION,
Defendant-Appellant.**

No. 3487.

Court of Appeals of New Mexico.

Dec. 19, 1978.

Rehearing Denied Jan. 8, 1979.

Lowell E. McKim and George W. Kozeliski, Glascock, McKim & Head, Gallup, for defendant-appellant.

Melvin L. Robins, Albuquerque, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Defendant-appellant appeals a judgment in a workmen's compensation case awarding benefits to plaintiff-appellee. We affirm.

Appellee was employed by appellant in 1969 to work in appellant's acid plant. On June 1, 1971, appellee accidently injured his back while working in the course and scope of his employment. However, he continued to work until 1975. At the beginning of that year, appellee transferred to appellant's rubber shop. In June of 1975, appellee again injured his back. Shortly thereafter, appellee underwent surgery for this back condition. After returning to work in March, 1976, appellee continued to have pain in his lower back. Upon examination by his surgeon, conservative treatment was recommended. On April 11, 1977, while opening and closing a vulcanizer door, appellee again injured his back but continued to work for two more days. On April 14, 1977, appellee failed to appear for work and did not return to appellant's plant until May 2, 1977. Upon his return, appellant assigned him to less strenuous tasks. Appellee continued to work on these tasks until June 15, 1977. Because of his back pain and the onset of more strenuous work, appellee again ceased working and this action followed.

Appellant relies upon the following five points for reversal: (1) the finding of total permanent disability is not supported by substantial evidence; (2) the finding that appellee suffered an accidental injury on April 11, 1977, is not supported by substantial evidence; (3) the finding that appellant had actual knowledge of the April 11, 1977 accident is not supported by substantial evidence; (4) the trial court erred in retaining jurisdiction and reserving its decision on the first cause of action; and (5) the award of attorney fees was excessive. We will discuss each point *seriatim*.

*Total Permanent Disability*

■ Under this point, appellant challenges the trial court's findings of fact no. 5 which reads as follows:

"As a result of the compensable accidental injury sustained by plaintiff, plaintiff is wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience.

It is well settled in New Mexico that the findings of a trial court in a workmen's compensation case will not be disturbed on appeal if they are supported by substantial evidence. *Gammon v. Ebasco Corporation,* 74 N.M. 789, 399 P.2d 279 (1965); *Moorhead v. Gray Ranch Co.,* 90 N.M. 220, 561 P.2d 493 (Ct.App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). Substantial evidence is relevant evidence which a reasonable mind accepts as adequate to support the conclusion. *Shirley v. Venaglia,* 86 N.M. 721, 527 P.2d 316 (1974); *Cave v. Cave,* 81 N.M. 797, 474 P.2d 480 (1970); *Tapia v. Panhandle Steel Erectors Company,* 78 N.M. 86, 428 P.2d 625 (1967). In deciding whether a finding has substantial support, we must view the evidence, together with all inferences reasonably deducible from such evidence, in the light most favorable to support the finding. *Gallegos v. Duke City Lumber Co., Inc.,* 87 N.M. 404, 534 P.2d 1116 (Ct.App.1975). We will reverse only if convinced that the evidence thus viewed cannot sustain the finding. Furthermore, only favorable evidence will be considered; any unfavorable evidence will not be considered. *United Veterans Organization v. New Mexico Property Appraisal Department,* 84 N.M. 114, 500 P.2d 199 (Ct.App. 1972). We will not weigh the evidence or determine the credibility of witnesses. *Platero v. Jones,* 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971). The trier of facts is the sole judge of the credibility of witnesses and the weight to be given their testimony. *State ex rel. Reynolds v. Lewis,* 84 N.M. 768, 508 P.2d 577 (1973).

■ After reading the record and applying the foregoing principles, we rule that there is substantial evidence to support the trial court's finding that appellee is totally and permanently disabled as per § 59–10–12.18, N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 1, 1974). *See Maes v. John C. Cornell, Inc.,* 86 N.M. 393, 524 P.2d 1009 (Ct.App.1974). In *Quintana v. Trotz Construction Company,* 79 N.M. 109, 440 P.2d 301 (1968), the Su-

preme Court stated that the following tests must be met in order for a claimant to be totally disabled: "(1) complete inability 'to perform the usual tasks in the work he was performing at the time of his injury'; and (2) absolute inability 'to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience.'" *Id.* at 111, 440 P.2d at 303. We note, in passing, that the court's finding essentially contains these two tests.

With respect to the first of these tests, the testimony of appellee's doctor, Dr. Allan Wilson, and supervisor establish that appellee is unable to perform the usual tasks required of an employee in appellant's rubber shop. Thus the first test was met. With respect to the second test, the testimony of various witnesses on direct, cross, redirect and recross examination can be interpreted as containing certain inconsistencies. On direct examination, appellee's doctor testified that appellee could probably do work which allowed alternative periods of setting and standing. Appellee's doctor then testified on cross-examination that appellee could do sedentary work and light work with accompanying pain. However, on redirect examination, the doctor modified his previous testimony by stating that, with respect to the above types of work, appellee would have to attempt to do this work before he would be able to give an opinion concerning appellee's capacity to do the work. Likewise, appellee testified on cross-examination that he did not know whether he could do any other jobs. On redirect examination, he testified that, based on his past work experience and training and because of his injury, he could no longer do that work which he was capable of doing before he was injured. However, on recross examination, appellee stated that there might be portions of work in appellant's rubber shop and acid plant which he might be able to do.

■ Before analyzing the import of the above testimonies, we note that opinion testimony of a medical expert may be considered as substantial evidence upon which a finding of disability may be made. *Roybal v. County of Santa Fe,* 79 N.M. 99, 440 P.2d 291 (1968); *Ortega v. New Mexico State Highway Department,* 77 N.M. 185, 420 P.2d 771 (1966); *Casaus v. Levi Strauss & Co.,* 90 N.M. 558, 566 P.2d 107 (Ct.App. 1977). In addition, once causation is established by appropriate medical evidence, the extent of disability may be established by the plaintiff. *Garcia v. Genuine Parts Company,* 90 N.M. 124, 560 P.2d 545 (Ct. App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). Whether the second test can be established by the testimony of appellee's doctor or appellee, therefore, depends upon the effect the above inconsistencies have upon this establishment. With respect to this issue, *Tapia v. Panhandle Steel Erectors Company,* supra, and *Montano v. Saavedra,* 70 N.M. 332, 373 P.2d 824 (1962) govern.

In the former case, the Supreme Court was faced with certain inconsistencies in plaintiff's testimony and stated: ·

> We are not required to determine whether there are in fact contradictions in Tapia's testimony. If there are, they only affect the credibility of the witness. It has been firmly established in this jurisdiction that only the trier of the facts may weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies.

*Id.* at 89, 428 P.2d at 628; *accord, Ortiz v. Mason,* 89 N.M. 472, 553 P.2d 1279 (1976); *Curtiss v. Aetna Life Insurance Company,* 90 N.M. 105, 560 P.2d 169 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976). In *Montano,* a workmen's compensation case, the medical witness testified on direct examination that the accident was the probable cause of the disability. On cross-examination, he admitted it would be difficult to say with any degree of probability that the accident was the cause of the condition; on redirect, he again stated that the accident was the most probable cause of the disability but was subject to argument. The Supreme Court ruled there was evidence from which the trial court could have found that

the accident was the probable cause of the condition. However, it upheld the refusal to so find and held it was the function of the trial court to evaluate all the evidence and determine where the truth lay. *See also, Martinez v. Flour Utah, Inc.,* 90 N.M. 782, 568 P.2d 618 (Ct.App.1977); *Moorhead v. Gray Ranch Company,* supra.

Applying the reasoning of these two cases to the case at bar, we rule that the trial court was justified in disregarding that testimony which was inconsistent with a finding that appellee is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience. In addition, we hold that appellee's testimony is substantial evidence to support this finding. Thus the second test for the establishment of total disability was met. In so holding, we point to the language of the Supreme Court in *Ideal Basic Industries, Inc. v. Evans,* 91 N.M. 460, 575 P.2d 1345 (1978):

> The determination of the degree of disability in workmen's cases is generally a matter for the trial court, and absent misapplication of the law or a lack of substantial evidence, an appellate court should not substitute its judgment for that of the trial court.

*Id.* at 1346. We also note that appellant's witness, Abraham Mackler, testified that appellee could perform various jobs despite his disability. However, as stated before, the trier of facts is the sole judge of the credibility of witnesses and the weight to be given their testimony. *State ex rel. Reynolds v. Lewis,* supra. Therefore, the trial court was justified in disregarding this testimony.

*Accidental Injury on April 11, 1977*

█ Under this point, appellant contends that the trial court's findings of fact no. 2 is not supported by the required evidence. This finding reads as follows:

> On or about the 11th day of April, 1977, plaintiff sustained a compensable accidental injury arising out of and in the course of his employment by the defendant, Kerr-McGee Nuclear Corporation.

Appellant's argument that the trial court erred in finding the occurrence of an accidental injury on this date is based primarily upon two grounds: first, appellant contends that the testimony reveals that appellee's pain related back to the 1971 accident and continued until the last day of his employment and, second, the testimony shows that the occurrence was only a continuation of painful incidents appellee had previously experienced while working on the vulcanizer can. Therefore, appellant asserts that April 11, 1977, has no major significance. In response, appellee argues that the court's finding has substantial support in the evidence, as the word "accident" has been interpreted by New Mexico case law. We agree.

█ In *Webb v. New Mexico Pub. Co.,* 47 N.M. 279, 141 P.2d 333 (1943), the Supreme Court, addressing itself to the issue of accidental injury, stated:

> After all it is a question of accident or no accident, and the precise second, minute, hour or day that it occurred is but evidence to be considered with the other facts and circumstances of the case in deciding whether the injury was in fact accidental. True, there must be a time when it can be said with certainty that a compensable accidental injury has been inflicted; but the cause, and the coming into existence of the evidence characterizing it as a compensable one, need not be simultaneous events. An injury may be gradual and progressive, and not immediately discoverable; yet certainly and definitely progress to discovery and then to a compensable injury.

*Id.* at 285–86, 141 P.2d at 337. *See also Salazar v. County of Bernalillo,* 69 N.M. 464, 368 P.2d 141 (1962). Accidental injury was also defined in *Stevenson v. Lee Moor Contracting Co.,* 45 N.M. 354, 115 P.2d 342 (1941). In that case, the Supreme Court said:

> It is not necessary that the injury should result momentarily, to be accidental. It may be the result of hours, even a day or longer * * * depending upon the facts of the case.

*Id.* at 367, 115 P.2d at 350. Therefore, it is apparent that the meaning of "accident" is not limited to sudden injuries, nor is its meaning limited by any time test. *Salazar v. County of Bernalillo,* supra.

In addition, appellee's doctor, Dr. Allan Wilson, testified that after April 11, 1977, appellee began to experience some pain in his right buttock and leg. Dr. Wilson stated that this pain was new to appellee's pain syndrome. Furthermore, this witness testified that after the April incident, he found tenderness to palpation in appellee's left and right sciatic notches and pain going into appellee's right leg. This was also a new finding. Finally, Dr. Wilson testified that appellee was more symptomatic both by history and on physical examination in June, 1977, than he was in June 1976, and that the April incident could be said to be the cause in this increase in symptoms. Dr. Wilson's testimony, therefore, establishes that appellee's weakened back condition was accelerated by the April incident. Such an acceleration is enough to establish an accidental injury. As this court stated in *Lyon v. Catron County Commissioners,* 81 N.M. 120, 464 P.2d 410 (Ct.App.1969), *cert. denied,* 81 N.M. 140, 464 P.2d 559 (1970):

Based upon the reasoning of these cases we take it that a malfunction of the body itself, such as a fracture of the disc or tearing a ligament or blood vessel, caused or *accelerated* by doing work required or expected in employment is an accidental injury within the meaning and intent of the compensation act. (Emphasis added.)

*Id.* at 125, 464 P.2d at 415. *See also Ortiz v. Ortiz & Torres Dri-Wall Company,* 83 N.M. 452, 493 P.2d 418 (Ct.App.1972); 1B A. Larson, Workmen's Compensation Law, § 38.00 at 7–9 (1978). Therefore, we hold that the trial court's findings of fact no. 2 is supported by substantial evidence.

### Actual Knowledge of the April 11, 1977 Accident

Again appellant attacks one of the trial court's findings of fact. In this instance, appellant challenges findings of fact no. 6 and contends that it is not supported by substantial evidence. This finding reads:

The plaintiff's superintendents and foreman at Kerr-McGee Nuclear Corporation had actual knowledge of the accidental injury.

In order to be entitled to benefits, a claimant must give written notice to his employer of the accident and injury within the statutory time period. § 59–10–13.4, N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 1, 1974). However, § 59–10–13.4B provides that written notice is not required in the following situation:

No written notice is required to be given where the employer or any superintendent or foreman or other agent in charge of the work in connection with which the accident occurred had actual knowledge of its occurrence.

It is well settled in New Mexico that verbal reporting of an accidental injury to an employer or its agent may possibly satisfy the requirement of this section. *Baca v. Swift & Company,* 74 N.M. 211, 392 P.2d 407 (1964); *Lozano v. Archer,* 71 N.M. 175, 376 P.2d 963 (1962). However, the fact that a verbal report has been made is not, in itself, determinative of whether the requirement has been satisfied. All of the circumstances of the case must be considered. *Gutierrez v. Wellborn Paint Manufacturing Company,* 79 N.M. 676, 448 P.2d 477 (Ct.App.1968). The record indicates that when appellee returned to appellant's plant on May 2, 1977, he spoke to his superintendents and mentioned specifically that opening and closing the vulcanizer door, along with the required bending and climbing, was bothering him too much. Appellee also testified that he thinks he told these superintendents at this meeting that this was the reason he had to take off from work. In response to this information, appellee's superintendents attempted to shelter him from strenuous activity and provide him with lighter work for the time being.

Under the particular facts of this case, it is difficult to distinguish and separate the injury from the accident that

caused it, i. e. the injury, the compression of the nerves going into the leg from the lower back by the L4–5 vertebrae, was the accident. In this situation, appellee gave the best notice he could. He described to his superintendents the activities which caused the acceleration of his weakened back condition and which gave him additional pain. By giving him lighter work, his supervisors understood the meaning of this notice. Under these circumstances, we rule that appellee's verbal report gave appellee's superintendents and foreman actual knowledge of the April 11, 1977 accidental injury and that, therefore, the court's findings of fact no. 6 is supported by substantial evidence.

In so ruling, we note that appellant's superintendents testified that appellee made no mention to them on May 2, 1977, of the April 11 activities or of his reason for leaving work. In addition, we note appellee's immediate supervisor testified that he had no record of appellee working with the vulcanizer on April 11. We repeat, the trier of facts is the sole judge of the credibility of witnesses and the weight to be given their testimony. *State ex rel. Reynolds v. Lewis*, supra. Therefore, the judge was free to take the evidence that seemed reasonable and truthful and make a finding based on that evidence. As long as the finding is based on substantial evidence, it will not be disturbed on appeal. *Gammon v. Ebasco Corporation*, supra; *Moorhead v. Gray Ranch Co.*, supra.

### Retention of Jurisdiction on the First Cause of Action

■ Appellant argues that the trial court erred in retaining jurisdiction and reserving its decision on the first cause of action. We affirm the court's retention of jurisdiction with the following comments. Appellee's complaint contains two causes of action. One relates to an injury in 1971; the second, upon which final judgment was entered, relates to an injury sustained on or about April 11, 1977. Appellant's argument that the trial court committed error is based upon several contentions. We will respond

specifically to only one. Appellant contends that the 1971 claim is barred by § 59–10–13.6, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1, 1974). Inherent in this contention is the argument that the trial court should have dismissed this claim pursuant to § 59–10–13.6. The trial court did not choose to so act; instead the court, in its Judgment, chose to act pursuant to Rule 54(b)(1) of the New Mexico Rules of Civil Procedure. Section 21–1–1(54)(b)(1), N.M. S.A.1953 (Repl.Vol. 4, Supp.1975). Rule 54(b)(1) states:

> Judgment upon multiple claims. Except as provided in Rule 54(b)(2), when more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may enter a final judgment as to one [1] or more but fewer than all of the claims only upon an express determination that there is no just reason for delay.

The trial court's Judgment contains the required determination. Therefore, it has retained jurisdiction over the 1971 injury. Thus, the effect of the court's use of Rule 54(b)(1) is that its judgment is a final order only with respect to the 1977 claim. Under these circumstances, our review is limited to the 1977 claim. *See Quintana v. Quintana*, 82 N.M. 698, 487 P.2d 126 (1971); *Pacheco v. Pacheco*, 82 N.M. 486, 484 P.2d 328 (1971). Only when a final order with respect to the 1971 claim is appealed can the question of the propriety of the court's present retention of jurisdiction be appropriately considered. Appellant's other contentions on this point are at this time without merit. They are based on no legal authority and establish no reasonable basis for a ruling that the trial court's present, legitimate exercise of Rule 54(b)(1) is error.

### Attorney Fees

■ Appellant argues that the trial court's award of attorney fees in the sum of $11,958.52 plus tax is excessive. Section 59–10–23D, N.M.S.A.1953 (2d Repl.Vol. 9, 1974) governs the award of such fees and reads in part as follows:

[T]he trial court in determining and fixing a reasonable fee must take into consideration:

(1) The sum, if any offered by the employer

(a) before the workman's attorney was employed; and

(b) after the attorney's employment but before court proceedings were commenced; and

(c) in writing thirty [30] days or more prior to the trial by the court of the cause; and

(2) The present value of the award made in the workman's favor.

To support its argument, appellant contends (1) that consideration must be given to the amount of work performed by the claimant's attorney, (2) that attorney fees should not be based on a percentage of the award made in the claimant's favor, and (3) that the possibility of a reduction in compensation benefits based upon a reduced degree of disability after the original trial should be considered. In making these contentions, appellant does concede, however, that the result obtained for the claimant by his attorney should be considered.

With respect to appellant's first contention, we note that § 59–10–23D does not include, among those considerations for determining a reasonable fee, the amount of work expended by a claimant's attorney. In addition, we have indicated in prior decisions that this factor is not determinative. *Gallegos v. Duke City Lumber Co., Inc., supra; Maes v. John C. Cornell, Inc.,* supra. However, even if the amount of effort expended were determinative, the facts of the present case indicate that the amount and caliber of work done by appellee's attorney is such that the present award is not excessive. That appellee's attorney expended much effort on his client's case is apparent by the complaint filed in this suit alleging two causes of action, the motion for a protective order against allowing a mental examination of appellee, the interrogatories filed, and the one pre-deposition conference and the seven depositions attended by appellee's attorney. In addition, at trial there

were many complex issues involved covering questions such as the definition of "accident," the degree of disability, notice of accident and substantial evidence questions.

As to appellant's second contention, we note that the right to attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Gallegos v. Duke City Lumber Co., Inc.,* supra; *Adams v. Loffland Brothers Drilling Company,* 82 N.M. 72, 475 P.2d 466 (Ct.App. 1970). Therefore, we cannot say as a matter of law that the trial court abused its discretion merely because its award was based on a percentage figure. *See Gallegos v. Duke City Lumber Co., Inc.,* supra, where an award based on 15% of the total recovery was held not to be an abuse of discretion despite the fact that the trial was brief and involved only simple issues.

With respect to appellant's last contention, we rule that the possibility of a future reduction in benefits cannot be a feasible consideration in the award of attorney fees since such a possibility cannot always be anticipated. In promulgating § 59–10–23D, the Legislature did not include such a possibility. Until the Legislature establishes guidelines to provide for this possibility, we choose not to utilize appellant's last contention as a basis for ruling that the trial court's award was excessive. Therefore, we hold that the award of attorney fees in the present case was not an abuse of discretion nor a violation of § 59–10–23D.

Based upon the foregoing, the judgment of the trial court is affirmed and the appellee is awarded $2,000.00 attorney fees on this appeal.

IT IS SO ORDERED.

SUTIN, J., specially concurs.

HERNANDEZ, J., dissents.

SUTIN, Judge (specially concurring).

I specially concur.

The purpose of this concurrence is to set the guidelines for proving total or partial

disability of a workman. Seldom does a workmen's compensation case appealed to this Court reflect a clear establishment of these results.

Section 52–1–24, N.M.S.A. 1978 reads:

As used in the Workmen's Compensation Act, "total disability" means a condition whereby a workman, by reason of an injury arising out of, and in the course of, his employment, is wholly unable to perform the usual tasks in the work he was performing *at the time of his injury, and* is wholly unable to perform *any work for which he is fitted* by age, education, *training,* general physical and mental capacity *and previous work experience.* [Emphasis added.]

Section 52–1–24 defines "partial disability" in identical language, except for the substitution of "some percentage-extent" for the word "wholly."

It is imperative that the "age, education, *training,* general physical and mental capacity and *previous work experience*" of a workman be proven. This proof encompasses a life history. Each fact must be delineated by competent evidence. This information must be established by a workman and made available to a medical expert and to an expert vocational analyst when both experts appear to testify. Expert witnesses should be requested to obtain the life history from the workman. The vocational analyst obtains this information in the ordinary course of his study of the problem, but generally lacks competence to express an opinion on the medical aspects of "general physical and mental capacity." The medical expert seldom obtains a life history of each factor involved. I am not satisfied with a disability rating by a medical expert. A workman may be 40% disabled medically, but totally disabled when coupled with the workman's education and experience. See, *Mabe v. North Carolina Granite Corporation,* 15 N.C.App. 253, 189 S.E.2d 804 (1972).

After the various factors have been proven, the workman and the experts should be asked:

In your opinion, based upon (your) (the) age, education, training, general physical and mental capacity and previous work experience (are you) (is the workman) wholly unable to perform the usual tasks in the work (you) (he) was performing *at the time of (your) (his) injury?*

In your opinion, based on those facts, (are you) (is the workman) wholly unable to *now* perform any work for *which (you) (he) is fitted?* [Emphasis added.]

The same questions can be asked on partial disability, and the percent of partial disability. To be totally or partially disabled both prongs must be answered affirmatively.

The life history of plaintiff follows:

At the time of trial, December 30, 1977, plaintiff was 32 years of age, with a wife and four children, living in a mobilehome and unemployed. In 1964, at the age of 18 years, he was graduated from Grants High School, Grants, New Mexico. While in high school, he worked as a shoeshine boy in a barber shop. After graduation, he was employed in the molding plant of Mount Taylor Mill Works at Milan, New Mexico. Thereafter, he was drafted into the United States Army and was discharged in 1968. He was then employed by United Nuclear as a "top-lander," one who drove an ore truck and delivered materials. In 1969, when the mine closed, plaintiff began his employment with Kerr McGee as a laborer, lifting heavy sacks of ammonium sulphate. A month and a half later, he was promoted to second class operator in the boiler room of the acid plant. This consisted of opening and closing valves, taking samples of water, treating the water with different chemicals and lifting materials for use in water.

Plaintiff was promoted to first class in the acid plant, and in 1971, while opening a valve in the boiler room, he was injured. He jerked to keep from burning his face and twisted his back, the forerunner of his future disability. He told his boss, continued working and saw a doctor or two.

In 1975, he was transferred from the acid plant to the rubber plant. This consisted of heavy lifting, climbing in and out of leech tanks, applying rubber to pipes, lifting pipes and pump bowls and vulcanizing them. It required bending, lifting and squatting. In June and July of 1975, the annual "turn-around" of the plant took place. The mill was shut down and all necessary repairs were to be made. While repairing a conveyor belt, plaintiff and another laborer lifted a 400 pound portable vulcanizer and plaintiff's back injury was aggravated, resulting in much pain and limping. On returning from a trip to California, plaintiff was attended by a chiropractor for 10 days without relief. He returned to work for three days but had to quit. He was again attended by the chiropractor and Dr. Allan Wilson in Albuquerque who suggested surgery. In August 1975, a laminectomy was performed.

In March 1976, seven months later, plaintiff returned to work. In April, his back pain returned. After notifying his employer he was sent to the company's doctor and was off work until May 2, 1976. The company doctor referred plaintiff to an Albuquerque doctor who suggested further surgery to perform a fusion atop the laminectomy. The company doctor did not recommend it. Plaintiff sought to do lighter work along with his pain and disability but nothing was available. He continued to work until June 16, 1977, but he was compelled to quit because he could not perform his duties.

At the time of trial, plaintiff had pain "like the stretching or pulling of the nerve." He attended the New Mexico State Branch College in Grants, New Mexico for one semester under the G. I. Bill and studied mathematics, speech, psychology and english. Since June of 1977 he was unable to work at all. Thereafter, under Dr. Wilson's recommendation, he lay down and lifted his leg toward his chest, two or three times a day for about two hours every day, to relieve the pain in his back.

An injured employee is "totally disabled" if he is unable to pursue any gainful employment without experiencing substantial pain. *Rachal v. Highlands Ins. Co.,* 355 So.2d 1355 (La.App.1978).

The foregoing evidence of plaintiff's age, education, training, general physical and mental capacity and previous work experience constituted sufficient evidence for the trial court to find that plaintiff was totally disabled at the time of the injury and at the time of trial.

To rebut plaintiff's total disability, defendant produced as a witness, Abraham Mackler, a vocational analyst, a well qualified expert to determine vocational disability. See, *Getz v. Equitable Life Assur. Soc. of U. S.,* 90 N.M. 195, 561 P.2d 468 (1977), an action on an insurance policy, in which Mackler testified.

Mackler spent two days interviewing plaintiff and secured information of the age, education, training, general physical and mental capacity and previous work experience. *However, he admitted he was not qualified to judge plaintiff from a medical point of view.* He was asked a hypothetical question to render an opinion as to what kind of job plaintiff could do. He testified to a list of twenty-six. One pertinent question was asked:

Q. In any event based upon this listing of jobs that you gave, there's twenty-six of them, most of these he could do immediately, is that correct?

A. He could do it right now based on your hypothetical.

This question and answer did not comply with § 52–1–25 that defines partial disability. It did not establish a percentage-extent of disability at the time of trial, and it did not establish a "percentage-extent to perform the usual tasks in the work he was performing at the time of his injury." This is the two prong test, both of which are essential to recovery of workmen's compensation benefits. *Medina v. Zia Company,* 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975); *Medina v. Wicked Wick Candle Co.,* 91 N.M.

522, 577 P.2d 420 (Ct.App.1977). Furthermore, Mackler's opinion did not include plaintiff's nerve-racking pain as a disabling factor in the performance of work, *nor that such work was actually available.*

Defendants usually rely on my *Medina* opinions. Before doing so, they must discern the facts in each case. In *Zia Company, the employer offered plaintiff work that he was fitted to do, wholly able to perform, and at the same wage,* but plaintiff left his work, went home and did not return. In *Wicked Wick Candle,* at the time of trial, *plaintiff had full-time employment as a clerk typist.* Neither case discussed a workman's ability to perform outside work, sedentary or otherwise. To attempt to make the two prong test applicable here on partial disability is an attempt to pole vault without a pole.

I should like to state my interpretation of the following language in the definition of disability.

    .    .    .   and is wholly unable to perform any work for which he is fitted .   . .

A misconception exists on the meaning of this phrase. Lawyers believe that read strictly as stated, an injured workman employed as an electrical engineer, plant foreman supervisor, department head or second class operator in a boiler room of an acid plant is not totally disabled if he has the capacity to perform ANY WORK. These words are given the broadest meaning, such as performing janitorial services, working as a filling station attendant, driving a truck on smooth highways, raking leaves for the city, selling pencils, and 25 other sedentary jobs. Affirmative answers by expert witnesses to questions put to them is considered to be sufficient to establish partial disability. This testimony is insufficient. These tasks are far removed from the workman's usual tasks, his physical and mental capacities, the risks involved and the unavailability of employment. They are not jobs "for which he is fitted."

The phrase "any work for which he is fitted" must be reasonably interpreted and liberally construed. Otherwise a man must be a helpless invalid or physical or mental basket case to be entitled to benefits. Total disability does not mean that a workman must be a helpless invalid. *E. R. Moore Co. v. Industrial Com'n,* 71 Ill.2d 358, 17 Ill.Dec. 207, 376 N.E.2d 206 (1978); *Wilson v. Weyerhaeuser Co.,* 30 Or.App. 403, 567 P.2d 567 (1977). "Any work" means a workman's ordinary employment, or such other employment, if any, approximating the same livelihood the workman might be expected to follow in view of his circumstances and capabilities. An injured workman is totally disabled if he cannot perform the same or similar work to that performed before the accident without unusual difficulty or danger. A skilled worker, although he may be able to obtain other types of skilled work, is totally disabled if he cannot perform a substantial portion of the work incident to his special occupation. By reason of the work-caused disability, the employee is placed at a disadvantage in securing employment in the labor market. *Thomas v. Holland,* 345 So.2d 1000 (La.App.1977). See, *Thompson v. Argonaut Ins. Co.,* 28 Or.App. 697, 560 P.2d 684 (1977). *Select Ins. Co. v. Boucher,* 551 S.W.2d 67, 76 (Tex.Civ.App.1977) says:

    The term "total incapacity" does not imply an absolute disability to perform any kind of labor. A person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is considered totally disabled. The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular trade or occupation. .   .   .

To conclude that an electrical engineer is partially disabled because he is capable of raking leaves or performing janitorial services destroys the spirit of the Workmen's Compensation Act. He has no other skills or training to draw upon. Each case must be considered on its peculiar facts for the reasons that what may be totally disabling to one workman would be only slightly disabling to another of a different age, back-

ground and experience. A workman 60 years of age with a fifth grade education doing hard labor may be totally disabled, whereas a young man with a football career may not be.

A total disability award must not be an inducement to malingering. A workman should have the burden of proving that reasonable efforts were made to obtain work within work capabilities and failed to obtain work; that similar work was unavailable. A workman should search for employment and mention the different places where application was made to determine whether employers would undertake the risks of a disabled workman. To answer one newspaper advertisement and apply directly to one employer is not sufficient, *Oliver v. Wyandotte Ind. Corporation,* 360 A.2d 144 (Me.1976), but where applications for work are made with fourteen employers, of course, the efforts made were sufficient. *Bowen v. Maplewood Packing Co.,* 366 A.2d 1116 (Me.1976).

The employer also has a duty to prove not only what the jobs might be, but more importantly, that such jobs be comparable or similar to the workman's skills and training and that these jobs were reasonably available to a person in the workman's position. This burden requires the employer to search for comparable available employment and assist the workman in obtaining work to support his family. "It is much easier for the defendant to prove the employability of the plaintiff for a particular job than for plaintiff to try to prove the universal negative of not being employable at any work." *Brown v. Safeway Stores, Inc.,* 82 N.M. 424, 427, 483 P.2d 305, 308 (Ct.App.1970). To justify this burden, the employer can, as this employer does, engage a private investigator to put the injured workman under surveillance. If a workman dawdles, the employer can test total disability every six months.

"Wholly unable to perform any work for which he is fitted" means:

1. unable to perform comparable or similar work to that which he performed before the accident occurred;

2. suitable to his skills, experience and training as a workman during his lifetime career;

3. for which employment is not presently or readily available in a stable labor market.

In the instant case, plaintiff was totally disabled.

The secondary purpose of this concurrence is to determine the reasonableness of an attorney's fee awarded a workman. Section 52–1–54(D), N.M.S.A. 1978, provides that "the compensation to be paid the attorney for the claimant shall be fixed by the court trying the same . . . *in such amount as the court may deem reasonable and proper* . . . provided, however, that the trial court in determining and fixing a reasonable fee must take into consideration . . . (2) the present value of the award made in the workman's favor." [Emphasis added.]

A contingency fee award is not acceptable as a standard for fixing the reasonable attorney fee. *Trujillo v. Tanuz,* 85 N.M. 35, 508 P.2d 1332 (Ct.App.1973); *Baghramain v. MFA Mutual Insurance Company,* 315 So.2d 849 (La.App.1975); *Salmon v. Salmon,* 395 S.W.2d 29 (Tex.1965).

The amount of recovery, being the present value of the award, is only a factor to be considered in determining the amount of the fee to be allowed the claimant's attorney. *Trujillo, supra; Seal v. Blackburn Tank Truck Service,* 64 N.M. 282, 327 P.2d 797 (1958).

In workmen's compensation cases, *Elsea v. Broome Furniture Co.,* 47 N.M. 356, 376, 143 P.2d 572, 584 (1943) says:

. . . Many considerations enter into the matter of fixing attorney fees, not the least important of which are: the ability, standing, skill and experience of the attorney; the nature and character of

the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom. [See *Williams v. Dockwiller,* 19 N.M. 623, 145 P. 475 (1914).] We observed also in the case last cited that the trial court which fixes the fee supposedly has a superior knowledge of the actual services rendered and the charges usually prevailing in the particular locality for such services . . . .

*Elsea* was adopted as the rule in *Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976), a divorce case in which an award of an attorney fee of $26,000.00 was upheld where the wife's attorney submitted a time card showing approximately 400 hours spent in preparation for trial and where the trial consumed two full days.

*Elsea* and *Michelson* stand for the proposition that "The reasons which would call for a disturbance of the amount so fixed by a trial court must be very persuasive." [47 N.M. at 376, 143 P.2d at 584.]

Neither the Workmen's Compensation Act nor judicial rule requires proof by expert witnesses or documentary evidence to establish the reasonableness of an attorney fee. "The award is for an amount the trial court deems 'reasonable and proper.'" *Salazar v. Kaiser Steel Corporation,* 85 N.M. 254, 259, 511 P.2d 580, 585 (Ct.App.1973). The amount deemed "reasonable and proper" varies from district judge to district judge. A review of New Mexico cases discloses vast variations. 5B West's New Mexico Digest, Workmen's Compensation, Section 1983 (1966) and 1978 Supplement.

To me, a reasonable attorney fee should not depend upon the idiosyncratic attitudes of a district judge or an appellate court. It should be based upon the considerations set forth in *Elsea, supra.* We do not disturb the amount awarded unless the amount is so large that it is shocking; that the district judge acted beyond the bounds of reason. Compared with the inadequate awards heretofore given, the amount awarded in

the instant case appears to be atop a mountain. To me, it was reasonable.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

There is substantial evidence in the record that the plaintiff is wholly unable to perform the usual tasks in the work he was performing at the time of his injury. However, the evidence presented by the plaintiff that he is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience, is unsubstantial. The record shows that the plaintiff was 32 years old, of average to above average intelligence, highly motivated and hard working. He was a high school graduate who had some additional training in the army as an automobile mechanic. At the time of trial he was taking courses in English, mathematics and psychology at the branch college of New Mexico State University at Grants. Dr. Wilson, one of the doctors who had operated on him in 1975 and had continued to treat him, testified that the plaintiff could do sedentary work but that he could not give a percentage figure as to the degree of plaintiff's disability, however, "I would guesstimate that it would probably be somewhere in the area of forty percent at this point." The plaintiff testified that he did not know what he could do. The plaintiff failed to carry the burden of proof as to this element.

Defendant's fourth point of error is well taken. Any claim that the plaintiff might have arising out of the accident in 1971 is barred by the limitation period. See Section 59–10–13.6 of the act. The trial court should have ruled that the claim was barred as a matter of law and dismissed it.

Defendant's fifth point of error is also well taken. Considering the issues, the proceedings, etc., it is my opinion that the trial court abused its discretion in awarding attorney's fees on a percentage basis and in the amount that it did.